BROWN v. MEMPHIS. See Case No. 9,415.

---

## Case No. 2,021.

### BROWN et al. v. MINTURN et al.

[2 Gall. 557.] [1]

Circuit Court, D. Rhode Island. Nov. Term, 1815.

ASSIGNMENT FOR CREDITORS—VALIDITY.

1. An assignment of property for the benefit of creditors is good against a subsequent attachment, although the creditors were not originally parties to the assignment, if they have in fact assented thereto before the attachment. (There are many cases to this point in the books. See them collected in 2 Kent, Comm. 532, 533, notes to 5th Ed.)

[Cited in Brooks v. Marbury, 11 Wheat. (24 U. S.) 100.]

2. Quaere, if such assent be necessary, to make such an assignment valid against attachments of other creditors.

[3. Cited in Adams v. Blodgett, Case No. 46, to the point that courts of law, in the exercise of chancery powers, can enforce conveyances in trust.]

At law. This was an action on the case, to recover the amount of certain notes made by the defendants [Brown and Ives] and endorsed to the plaintiffs [Minturn and Champlin]. There was a plea in abatement and issue thereon, arising under the state laws of Rhode Island, in which the sole question was, whether the goods, attached in the suit, were, at the time of the attachment, the property of the defendants or not. [Verdict for defendants.]

Upon the trial of the cause, it appeared in evidence, that the goods attached were the schooner Sally and cargo, which had arrived at Newport from Canton. The Sally and cargo originally belonged to the defendants, who were merchants at New York, and all the papers and documents of the vessel and cargo were in their name at the time of her arrival. During the voyage, the defendants having failed in business, on or about the 6th of October, 1814, executed an assignment of a large mass of property, including the Sally and cargo, to Messrs. Hone, Newbold and Abbot, for the benefit of certain creditors enumerated in a schedule annexed to a declaration of trust accompanying the assignment. There was an attendant bond given by the defendants to the trustees, at the time of the assignment, as additional security, acknowledging a debt equal to the amount due to all the schedule creditors. None of the creditors were parties to the original assignment; but it was in fact made at the instance and with the assent of two of the banks in New York, which were creditors to a very large amount, and as to some of their claims, had a priority given in the assignment. Most of the other creditors, within a few days after the assignment, and before the arrival of the vessel, assented to it, and had in fact, since that time, received their dividends, under its authority. The

---

[1] [Reported by John Gallison, Esq.]

Sally arrived at Newport on the 26th of October, 1814, and on the same day possession was taken of the vessel and cargo by the agents of the trustees, with the consent of the master, in virtue of the assignment; and, in the manifest of the entry at the customhouse, a memorandum of the title of the trustees was added in the original column of the consignment. The present attachment was made on the 28th of the same month of October.

Thomas Burgess and Mr. Burrill, for plaintiffs, contended, that the assignment was void, the creditors not having originally been parties to the assignment; and that therefore it was a fraud upon the attachment law of the state of Rhode Island; and they, in the next place, endeavored to establish that the assignment was fraudulent in point of fact.

Hazard & Searle, for defendants, contended, that it was not material that the creditors should have been originally parties to the assignment; and that, at all events, it was sufficient if they assented before the present attachment was made; even supposing an assent was necessary to sustain the assignment. That in fact the creditors had generally so assented, and the two banks in New York, who were the original projectors or advisers of the assignment, were creditors to an amount more than equal to the value of the Sally and cargo, and all other property, which had come to the hands of the trustees; and that there was the clearest evidence in this case, that the whole transaction was bona fide.

STORY, Circuit Justice (after summing up the evidence to the jury). Upon this evidence it does seem to me that, if it is believed, there is not the slightest imputation of fraud in the transaction. The assignment was made for a meritorious purpose, to secure the payment of the debts of bonae fidaei creditors. Every debtor has a legal right to assign property for the security of the debts due by him; and so far from such an act being reprehended by the law, it is justified and approved. It is argued, however, that in point of law the assignment was fraudulent, because the creditors were not originally parties to the instrument. This objection cannot prevail; for, at all events, it is sufficient to uphold the assignment, that the creditors assented long before this attachment. The assignment was made for their benefit, and by their subsequent assent, notified to the assignees, they acquired not only an equitable, but a legal, title to their proportions of the trust money. Whether, in point of law, such an assent be necessary to uphold the assignment, supposing it good in other respects, I do not decide. I am aware, that it has been holden, that general assignments, made without the assent, but for the benefit, of creditors, are

frauds upon the attachment law. But there are great authorities opposed to the principle of this doctrine; and I desire to reserve an opinion, until it is the turning point of the cause. The present case steers wide of the objection. Vide, in addition to the authorities cited, 1 Gall. 429, note 6 [Meeker v. Wilson, Case No. 9,392]; 5 Term R. 424, 530; 8 Term R. 528; 1 Johns. Cas. 156; [Kennedy v. Fury] 1 Dall. [1 U. S.] 72; [McCullum v. Coxe] Id. 139; [Oxley v. Oldden] Id. 430; [Burd v. Smith] 4 Dall. [4 U. S.] 85; 1 Bin. 502; 2 Bin. 174; 1 Camp. 147; Meux v. Howell, 4 East, 1; and, particularly, Pickstock v. Lyster, 3 Maule & S. 371; West, Extents, 334.

The jury found a verdict for the defendants.

NOTE [from original report]. No question was made at the bar, and therefore no opinion was given by the court, how far the plea in abatement was good in point of law, it being in fact contrary to the return of the officer. It has been generally considered, that the return of the officer could not be contradicted in the suit before the court; and that the parties were left to their remedy for a false return; or if property were attached, that the real owner (if not a party to the suit), might maintain replevin or trespass. Vide Slayton v. Chester, 4 Mass. 479; Gardner v. Hosmer, 6 Mass. 325; Com. Dig. "Retorn," G.