NICOLL and VANDEWATER *against* MUMFORD.

The interest of each partner, in the partnership property, is his share in the surplus, subject to all partnership accounts, &c.

An assignee, therefore, or separate creditor, of one partner, is entitled only to the share of such partner, after a settlement of the accounts, and after all the just claims of the other partner are satisfied.

Ship owners are *tenants in common* of the vessel, not joint tenants, or partners; and one of them, where the vessel has been sold, knowing that the share of the other had been before lawfully assigned, has no right to possess himself of the whole proceeds, with a view to retain such share, to satisfy any claims he may have against the other.

The assignee of one part owner of a vessel, is entitled to his part or the proceeds thereof, without being subject to any general balance of account between the owners.

Owners of *freight* and *cargo* are joint tenants or partners, and the assignee or separate creditor of one of them takes his interest, subject to an account between him and his copartner in the voyage.

But where one joint owner of the freight and cargo of a particular vessel on a particular voyage, assigns his interest therein, one of them who has got possession of the whole proceeds, cannot retain the share so assigned, to satisfy claims he may have against the other, arising from former and distinct voyages or adventures, in which they may have been concerned together, in the same, or other vessels; they not being general partners in trade, and there not being any connection between the different voyages or adventures.

An insolvent debtor may, *bona fide*, assign his property before it has become bound by any lien, in *trust*, for the benefit of all his

creditors: and the assent of the creditors is not necessary to give legal validity to the deed.

But where the assignment is directly to the creditors, without the intervention of trustees, the assent of the creditors is requisite to give it legal validity.

IN 1815 and 1816, the defendant, *Gurdon S. Mumford*, and *Samuel Stillwell*, were joint owners of the brig *Phœnix*, and her cargo, on a trading voyage to the *Mediterranean*, &c. After disposing of her outward cargo, which was shipped in the joint names of *Mumford* and *Stillwell*, and taking in another, the *Phœnix* went to the coast of *Brazil*, sold her cargo, and took in another, and arrived at the *Havanna*, where the captain invested the proceeds arising from the sale of the brig, and of the last cargo, in *sugar* and *coffee*. *S.* having become insolvent, the defendant, who had heard of the arrival of the *Phœnix* at *H.*, in order to secure his claims against *S.* arising out of their joint concern in three other vessels, and voyages, and to indemnify himself for losses arising from his connection with *S.*, wrote to the master of the *Phœnix* at *H.*, directing him to consign the cargo, in which the proceeds arising from the sale of the brig and cargo at *H.* should be invested, to the defendant individually. The master, accordingly, and with the advice of merchants there, shipped the sugar and coffee so purchased with the proceeds of the brig and her cargo, on board the brig *Newton*, consigned to the defendant, at *New-York*, as if he was the sole owner. The *Newton* arrived at *New-York*, with the cargo, so consigned, to the defendant, on the 24th *February*, 1817; and the defendant entered the cargo at the Custom-House, took possession of it, and sold it, and applied the proceeds of *S.*'s share to the payment, as the defendant alleged, in his answer, of the debts of *Stillwell*. *Stillwell* had, on the 27th *April*, 1816, assigned all his estate, real and personal, according to a schedule annexed to the deed of assignment, including the

brig *Phœnix* and her cargo, to the plaintiffs, in trust, for all his creditors. The bill alleged, that the defendant had notice of this assignment soon after it was executed, and long before the arrival of the *Newton* with her cargo. That the plaintiffs, relying on the assignment, and that the property would come to their hands, paid the debts of *S.* and, among the rest, bonds at the Custom House, to a large amount. That all the property assigned, including the cargo of the *Newton*, is insufficient to pay the Custom House bonds, and debts due to the other creditors of *S.* That the creditors of *S.* relying upon the assignment, and on the good faith with which it was made, pursuant to the stipulations contained in it, did, by an instrument executed by them, under their hands and seals, prior to the 1st of *September,* 1816, and annexed to that assignment, release and discharge *S.* from the debts owing to them respectively. That the plaintiffs have demanded the proportion of *S.* in the cargo sent by the *Newton*, and the proceeds, of the defendant, who has refused to deliver or pay to them any part thereof. The bill prayed, that the defendant might be decreed to account, &c. and pay over to the plaintiffs the one half of the proceeds of the brig *Phœnix* and cargo, &c. and for general relief.

The defendant, in his *answer*, admitted the material facts stated in the bill; and insisted on his right to retain the proceeds of the *Phœnix* and cargo, and to apply the proportion of *S.* to the payment of the amount due from *S.* to him, on the settlement of their partnership transactions; and he offered to come to an account and general settlement of all his dealings and transactions with *S.*

*June 26th.* The cause, this day, came on to be heard on the pleadings and proofs.

*Slosson* and *C. Graham*, for the plaintiffs. They cited 2 *Johns. Ch. Rep.* 144. 9 *Johns. Rep.* 502. *Abbot on*

*Ships*, 82. 1 *Montague on Partnership*, 102. 181. 2 *Term Rep.* 409. 1 *Campbell N. P. Rep.* 95.

*T. A. Emmet*, contra. He cited *Cowp.* 405. 4 *Vesey*, 396. 1 *Wightw. Rep.* 50.

The cause stood over for consideration to this day. *August 5th.*

THE CHANCELLOR. The question, in this case, is, upon what principles the account between the parties shall be directed to be taken.

*Stillwell* and the defendant were equally concerned in the brig *Phœnix* and her cargo, and in the profit and loss of the voyage. There can be no doubt that the account is to be taken, as between partners, in respect to the freight and cargo; and the only difficulty is, as to the vessel. As far as the defendant and *S.* were to be considered partners, so far the defendant is to be deemed as having a lien on the partnership property, in respect to the balance that shall come due to him on the partnership account. No separate creditor of one partner can be entitled to more than the person in whose place he stands. He can only take his debtor's share after the other partner, *qua* partner, is satisfied, and has had all just allowances for debts, expenses, and advances, *in that character*. The interest of each partner is his share of the surplus, subject to all partnership accounts; and that interest, or surplus only, is liable to the separate creditors of such partner, claiming either by assignment or under execution. As between one partner and the separate creditors of the other, they cannot affect the joint property any further than the partner, whose creditors they are, could have affected it. This is the settled rule in cases of partnership property, and the doctrine of Lord *Hardwicke*, in the leading case of *West* v. *Skip*, (1 *Vesey*, 239,) has received a constant sanction in succeeding cases. *(Fox* v.

*An assignee or separate creditor of one partner is entitled only to the share of such partner, after a settlement of the accounts, and after all the just claims of the other partner are satisfied.*

*The interest of each partner is his share in the surplus, subject to all partnership accounts, &c.*

*And that interest alone is liable to the separate creditors of such partner, claiming either by assignment or execution.*

1820.

NICOLL
v.
MUMFORD.

*Hanbury, Cowp.* 445. *Field* v. *Clarke,* 4 *Vesey,* 396. *Dut-ton* v. *Morrison,* 17 *Vesey,* 193.)

But a difficulty arises in the application of this doctrine to the vessel.

In *Doddington* v. *Hallet,* (1 *Vesey,* 497.) Lord *Hardwicke* so applied it, and held that part owners in a ship, were to be considered partners and joint owners, though they were, in fact, but tenants in common ; and that the distribution of the assets of one of them, being insolvent, was to be made as if joint property, and to be applied first to the joint debts, and to be treated as partnership property, chargeable with all debts for which either owner was liable, on account of the ship. This case was expressly overruled by Lord *Eldon,* in the case *ex parte Young,* (2 *Ves.* and *Bea.* 242. 2 *Rose,* 78. *note.*) who held, that a ship stood upon the nice distinction of a tenancy in common. He ruled again, in the case *ex parte Harison,* (2 *Rose's Cases in Bankruptcy,* 76.) that the owners of a ship were not interested in it as joint tenants, but as tenants in common, and that the bankrupt's share passes to the creditors under the bankruptcy, without being liable, specifically, by way of lien, to the claims of the other part owners, in respect of their disbursements and liabilities for the ship. So, also, in the case *ex parte Gibson,* (1 *Montague on Partnership,* 102. *note.*) it was held, that a bankrupt's interest in the moiety of a vessel, was his separate property, and not held by his assignees, for the purpose of paying the joint creditors of the ship.

This doctrine of a distinct separate property in a vessel between part owners, as tenants in common, seems to have had countenance from Lord *Loughborough,* in the case *ex parte Parry,* (5 *Vesey,* 575.) where one joint owner of a ship insured on his own account, and became a bankrupt. It was held, that though the cargo and proceeds of the voyage were joint property, the produce of the insurance on the ship which was lost, was separate property. And, perhaps, we may say, with Sir *Arthur Piggot,* that it is the

*Ship owners are tenants in common, not joint tenants.*

universal understanding in the commercial world, and especially among ship-owners, that part owners of a ship are not partners. He said. that the case of *Doddington* v. *Hallet*, was never acted upon; and the *English* usage is doubtless our usage upon this point.

I dare not, therefore, follow a case which has never had effect, and has been so authoritatively exploded. The late cases which have been referred to, are in point against the allowance of any partnership claim, or taking an account on the foot of any partnership in the vessel. And, as Mr. *Belt* has observed, (*Supplement to Vesey, senior*) in his notes on the case of *Doddington* v. *Hallet*, it was rather singular that Lord *Hardwicke* should have found a partnership of the ship, and each part owner liable *in solido*, for all advances, when the agreement stated in that case, expressly declared, that the parties agreed *severally, and not jointly, and each for himself*; and the short argument for the defendant, as reported in that case, states facts and principles which strike me as most weighty and conclusive on the question. The assignment then of *S.*, of the 27th of *April*, 1816, and which was long before the *Phœnix* arrived at the *Havanna*, passed to the plaintiffs the right to a moiety of the vessel; and the defendant must be held accountable for that moiety, or the proceeds of it, which he has received, without making those proceeds subject to the balance which may be found due on a settlement of partnership accounts. The freight and the cargo are subject to such a balance, because as to them they were partners, but not as to the vessel. As to that, they were merely tenants in common, in like manner as if they had owned in common a warehouse, or other real property, in *New-York*.

The next question is, whether the freight and proceeds of the cargo of the *Phœnix*, are subject to the unsettled balance, (if any) due to the defendant on former joint transactions between him and *S.*, in respect to the ships *Union* and *Orris*, and in voyages by those vessels on their joint account.

1820.

NICOLL
v.
MUMFORD.

Where one joint owner assigns his interest in the freight and cargo of a particular vessel, on a particular voyage, the other partner, who has got possession of the proceeds of such freight and cargo, is not entitled to be allowed and paid out of them, any claims he may have against his co-partner, arising from former and distinct voyages and adventures in which they were concerned together, in the same or other vessels; they not being general partners in trade, nor any connection existing between the different transactions or voyages.

This pretension on the part of the defendant is quite unfounded, because the case does not afford any evidence that the defendant and S. were general partners in trade, or had any other or further connection than what each separate adventure occasioned. A joint concern in the *Phœnix's* voyage, had no necessary connection with that of any former voyage; and to make the rule of law apply, limiting the assignees of S. to the surplus of the cargo and voyage of the *Phœnix*, after deducting the balance due the defendant *on other transactions*, it must distinctly and clearly appear that the concern in the cargo and voyage of the *Phœnix*, and of the former voyages and adventures, were all one, entire, subsisting, connected and continued partnership transaction. Nothing of that kind appears, or is to be inferred from the pleadings and proofs in the case. It appears by the answer, that the defendant owned only the one third of the *Phœnix* until a short time before her departure, and that S. owned the other two thirds. This inequality in that case, affords a strong presumption, that the parties had no fixed and settled connection as partners; and it was for the defendant to have made out the fact in proof, if it had existed.

If we put the suggestion of partnership out of view, then the defendant has no ground to retain the proceeds of one moiety of the *Phœnix*, in discharge of any general balance of accounts which he may claim and put forward by way of set-off. The right of S. to a moiety of the proceeds of the vessel and cargo, had been duly assigned to the plaintiffs in trust, for the benefit of all the creditors, and the defendant had no right, afterwards, with the knowledge of that fact, to take and appropriate those proceeds to himself. The right had vested in the assignees, in *April*, 1816, and most of the creditors, before *September*, 1816, had come in and released S. in consideration of the assignment, and of the dividends to be received. It is in proof that the defendant knew of that assignment before he wrote the letter to Captain *Green*, on the 13th *September*, 1816, requesting him

to consign the entire cargo to him, the defendant, " to se-
cure his advances on that and all other accounts." The
defendant had no right, with or without the concurrence of
Captain *G.*, to seize and take possession of the share of *S.*,
which had been lawfully transferred to and vested in the
plaintiffs. It was a possession acquired wrongfully, against
the act and deed of the true owner ; and it would seem to be
impossible, upon general principles of equal justice, or with
safety, to credit and creditors in general, to give sanction
to such a race of diligence, and such an act of unautho-
rized appropriation.

The fact of the assent of the creditors to the assignment,
prior to the taking possession of the property by the de-
fendant, may make the case more impressive, but I do not
consider any express avowal of that assent as necessary to
the operation of the assignment. It is settled by a series of
cases, referred to in *Hendricks* v. *Robinson*, (2 *Johns. Ch.
Rep.* 307, 308.) and to which may be added the cases of
*Pickstock* v. *Lyster*, (3 *Maule & Selwyn*, 371.) and *Brown*
v. *Minturn*, (2 *Gallison*, 557.) that an insolvent debtor may,
at any time, before his property becomes bound by any lien,
assign it over to trustees, for the benefit of all his creditors,
by an act made *bona fide*. The assignment is to be refer-
red to an act of duty, attached to his character of debtor, to
make the fund available for the whole body of the creditors.
In the case last cited, it was held that the assignment was
good against a subsequent attachment, if the creditors had
*assented* to the assignment prior to the attachment ; and the
inclination of the learned judge seemed to be in favour of
the validity of the assignment, even without such intervening
assent, and which, I apprehend, is not indispensable. If *the
assignment* was directly to the creditors, their assent would
be necessary to give validity, in law, to the deed. But if
the assignment (as in this case) be to trustees, for their use,
the legal estate passes and vests in the trustees, and Chance-
ry will compel the execution of the trust for the benefit of the

1820.

NICOLL
v.
MUMFORD.

An insolvent debtor may, *bona fide*, assign his property in *trust* for the benefit of all his creditors; and the assent of the creditors is not necessary to give legal validity to the deed.

But if the assignment is directly to the creditors, their assent is necessary to give it legal validity.

creditors, though they be not, at the time, assenting, and parties to the conveyance. This point was not necessary for decision in that case; but as far as the case went, it is equal to any other, in point of authority, derived, most justly, from the character of the judge, and the very able and accurate investigation by which his decisions are distinguished.

I shall, accordingly, direct a reference, to take and state an account; and that, in taking the account, the defendant be charged with the net proceeds of one moiety of the brig *Phœnix*, sold at *Havanna*, and with one moiety of the net proceeds of her freight and cargo, upon the voyage, in the pleadings stated, or so much (if any) of such moiety of the freight and cargo as shall appear due to the plaintiffs, as assignees of *S.*, after deducting the balance that may be found due to the defendant, from *S.*, on a settlement of accounts between them, *in respect to their joint concern in the said freight and cargo and voyage of the Phœnix*; and all further questions are reserved.

Decree accordingly.

*Reversed in part & modified
20 Johns 64 – 637*