## COPELAND & al. vs. WELD & trustee.

If goods be assigned in trust for the payment of debts, and the assignee be summoned as the trustee of the debtor, in a suit brought by a dissenting creditor the latter is to be preferred to such creditors as had not assented to the assignment prior to the service of his process.

The assent of preferred creditors to an assignment for the payment of debts may well be presumed, their claims being fully provided for ; that of other creditors must be expressed.

Where goods were so assigned, which the trustees sold, taking the purchaser's notes on time, which were not yet payable, it was held that he was still chargeable for their value, as the trustee of the debtor, in a foreign attachment.

Where property of various descriptions is assigned for the payment of debts, and the assignee is summoned as the trustee of the assignor, in a suit brought by a dissenting creditor, the Court will not undertake to marshal the assets in his hands, by designating the fund out of which any creditor shall be paid.

Whether, if a general assignment be made, for the equal benefit, *pro rata*, of all the creditors of the assignor, their assent to it may be presumed ;—*quære*.

Whether a verbal assent to such assignment is sufficient ;—*quære*.

Whether, if the written assent of the creditor be necessary, and the indenture be made in triplicate, his signature to one of the parts is sufficient ;—*quære*.

THE principal question in this case was whether the trustee was chargeable. The facts, as disclosed, were these. *Weld*, being in failing circumstances, made an assignment of all his property, consisting of stock in trade, book-debts and securities, to *Laban Lincoln*, the trustee in this action ; in trust, to convert the property into money, and after deducting the necessary incidental expenses, and a reasonable compensation to the assignee, then to pay the sums due from *Weld* to the *Vassalborough* Bank, by notes signed by *Ebenezer Dole* and *Gow & Lincoln* as sureties, or to reimburse these sureties for any sums by them paid on the same account ; secondly, to pay all debts due from the assignor for borrowed money, being a note for one thousand dollars due to *James Parker* ; thirdly, to pay all other of his debts, *pro rata* ; and the balance, if any, to be refunded to the assignor. The assignment was by indenture

of three parts, between *Weld, Lincoln,* and such creditors as might become parties ; but it contained no covenants on the part of the latter ; and was executed *March* 22, 1831, by the assignor, assignee, *Parker* and *Dole.* The assignee sold between two and three hundred dollars worth of the goods, at retail, for cash ; and on the 9th of *May* following, he sold all the residue for $2200,26, secured by negotiable promissory notes payable in twelve, eighteen, and twenty-four months, without interest. The book accounts and securities assigned to him amounted nominally to $2138,93, of which a considerable part was deemed of no value. All the money he had received, from any source, had been paid over to the *Vassalborough* Bank, after deducting contingent expenses, but did not suffice to discharge that debt, by about forty two dollars. In this stage of the transactions the assignee was summoned as the trustee of *Weld,* in this action. Afterwards the assignment was signed by two other creditors. One *Sullivan Kendall,* a creditor of *Weld* to the amount of one hundred dollars, assented verbally to the assignment, and signed one part of the indenture soon after it was made, and before the service of the plaintiffs' writ ; but he had never signed the part in the hands of the assignee.

At the time of disclosing, the trustee had collected about four hundred and thirty dollars, of the debts assigned to him ; but the whole of this class of property, which could be collected, would not suffice to pay the preferred creditors. He had also paid the balance due to the bank, whose debt amounted in all to six hundred and forty two dollars. *Dole* and *Gow & Lincoln,* were not creditors of *Weld ;* but were merely his sureties to the bank. The notes which the assignee had taken for goods sold by him remained in his hands, unpaid ; except one of them, which he had transferred to *Parker,* in part payment of his debt. And after a calculation of interest and expenses, he stated that the amount of the last mentioned notes, reduced to their cash value, would be $2038 ; and that the preferred debts, with incidental expenses and store rent would amount to $1900, leaving a balance of $138 in his hands, applicable to *Kendall's* debt, and to the expenses incident to this suit.

*Otis,* for the trustee, contended that he ought not to be charged : first, because, at the time he was summoned, he held only *choses in action,* which are not subject to be attached by this process. *Lupton v. Cutter & tr.* 8 *Pick.* 298; *Gore v. Clisby & tr. ib.* 555; *Perry v. Coates & tr.* 9 *Mass.* 537 ; 7 *Mass.* 438 ; *Andrews v. Ludlow,* 5 *Pick.* 28 ; *Clark v. Brown,* 14 *Mass.* 271. And the circumstance of the goods having been sold for some of the notes, by the assignee, makes no difference ; for the sale having been fairly made, in the due execution of the trust, he is not responsible should the debtors become insolvent. 2 *Pick.* 86 *; 3 Pick.* 65.— Secondly, if he is chargeable for the amount of these last mentioned notes, yet it is not sufficient to pay the debts of the preferred creditors and of those who had assented previous to the present attachment ; allowing the assignee a reasonable indemnity for the expenses of this suit. Thirdly, it is for the trustee to determine out of what funds in his hands he will pay the preferred debts ; and the court will not interfere in the marshalling of the assets. *Webb v. Peale,* 7 *Pick.* 247.

*Sprague* and *Robinson,* for the plaintiff.

WESTON J. delivered the opinion of the Court at the adjournment of *May* term in *Cumberland,* in *August* following.

By the general policy of our law, the property of debtors, with certain exceptions, is liable to be taken by their creditors, by due process of law. A debtor however is at liberty to prefer one creditor to another, by transferring any thing he has in payment ; or by pledging or mortgaging it, by way of security. He may also assign his property, *bona fide* in trust for the payment of his debts, and such assignment, at least when assented to by his creditors, will be binding and operative. And it has been held in Massachusetts, that such assent is essential ; and that creditors assenting subsequently to an attachment, at the suit of any other creditors, are to be postponed, and to give place to such intervening attachment. *Widgery v. Haskell.* 5 *Mass.* 144 ; *Stevens v. Bell,* 6 *Mass.* 339. Without such assent, the instrument of assignment may be valid to transfer

the property in trust; and the trustee may be compellable to fulfil the duties thereby imposed upon him. 4 *Johns. Ch.* 531; *Brown v. Mintum,* 2 *Gall.* 557.

In *Brooks v. Marbury,* 11 *Wheat.* 78, *Marshall C. J.* was of opinion, that the assent of preferred creditors was to be presumed, and that their rights vested by the assignment, and could not be defeated by any other attaching creditor. In the other cases, last cited, there is a leaning to the same opinion. But the decisions of Massachusetts, prior to the separation, and the practice of both States since, so far as we are informed, has been otherwise; and the rights of an attaching creditor have been preferred to those of creditors, who had not actually assented, prior to the attachment. To adopt a different principle, would enable an insolvent debtor to confide to his friends the administration of his affairs, and would entirely take away the advantage, which the policy of the law has given to the vigilant, over the slumbering, creditor. The assent of the preferred creditors may well be presumed. They may exhaust the whole fund; and the dissent of the other creditors is equally presumable, if by their vigilance, they may place themselves in a better situation. The law, as adopted and understood here, gives them this chance in the race. If they start earlier, and arrive at the gaol sooner, the prize is theirs. If an insolvent debtor should make an assignment, *bona fide,* of all his property, for the benefit of all his creditors, *pro rata,* imposing no conditions upon them, there might be strong reasons for presuming, that an assignment so beneficial might be assented to by all, who do not expressly dissent. Whether if such a case should arise, such presumed assent should be regarded, as having the same effect as an express one, we are not now called upon to determine. In the present case we are of opinion, that the attaching creditor is to be preferred to such creditors, as had not assented, prior to the service of his process. We reserve ourselves with respect to the rights of *Sullivan Kendall,* who had before that time notified his assent, but had not executed the instrument. It is not necessary to decide that point, upon the

question now submitted, whether the trustee is or is not to be so adjudged.

Of the goods assigned, and sold on a credit, the cash value exceeds two thousand dollars. For these, notes had been taken, payable to the trustee, not collected at the time of the service. These it is insisted, are not liable to be taken under this process. The trustee, under the assignment, did not, upon these sales, become the debtor of the insolvent debtor, or the assenting creditors, until he had received the money, or was chargeable with neglect. But it must be remembered that the attaching creditor overreaches the assignment, and has a right to insist that as to him it has no validity, except so far as the property was appropriated to previously assenting creditors. He has a right therefore to hold the trustee liable, as the receiver of the goods of his debtor, and it is no sufficient answer on his part to say, that he has sold them on a credit. But the amount of sales, which appear to have been made beneficially for all concerned, may be regarded as the proper measure of their value. And the expenses and disbursements, fairly incurred in the management of the business, are to be allowed to the trustee. To the amount of goods sold on credit, is to be added the amount, previously sold for cash. The trustee does not precisely fix the amount; but the aggregate, from the data given us, appears to be little, if any, short of twenty three hundred dollars. The liabilities incurred and amount due, to the prior assenting creditors, if *Sullivan Kendall* is regarded as one of them, does not appear to exceed two thousand dollars; so that it is very clear that the trustee must be adjudged to be such, upon his disclosure.

But as further intimations may aid the parties, we proceed to the consideration of some of the other grounds, upon which it is insisted he may be charged. First, that the *Vassalborough* bank is not an assenting creditor, and that the trustee is not to be allowed for the payments made to that bank, at least since the service of this process upon him. But as he was liable as a surety for that debt, it was perfectly competent for the principal debtor to assign property for his security, and as his assent was prior, so his right to hold the

extent of his liability, is prior to the attachment. Secondly, although it is conceded that the trustee is not chargeable directly for the notes and demands assigned to him ; yet the court are called upon so to marshal the assets, as to appropriate this fund to the payment of the preferred creditors. In *Lupton v. Cutter & tr.* 8 *Pick.* 298, and in *Gore v. Clisby & tr.* 8 *Pick.* 555, the court refused a similar application ; and very satisfactory reasons are assigned, in the former of these cases. For so much only of these, as had been collected prior to the service of this process, he is to be charged. The amount thus collected, is not stated by the trustee. This sum, when known, being added to the proceeds of the goods, after deducting therefrom the amount to be allowed to the trustee, upon the principles before stated, the extent of his liability may be ascertained. There may be enough to satisfy the attaching creditor, without postponing the right of *Sullivan Kendall.* If there is not, and the parties cannot adjust it, the question in regard to him may be settled upon *scire facias.*

*Trustee charged.*