Tucker, P.
The counsel in this case have very laboriously discussed a question which appears tp me to have been completely closed by the well considered decisions of this court. In The Mutual Assurance Society v. Stanard, 4 Munf. 539. the court were of opinion that the lien of a judgment upon the lands of the party relates back to the commencement of the term at which it is obtained, and overreaches a deed of trust or other incumbrance on the land executed on or after the first day of the term. In the case of Coutts v. Walker, 2 Leigh 268. the counsel for the appellant suggesting that the point had not been argued in the case of The Mutual Assurance Society v. Stanard, and that it ought not therefore to be considered as settled by that adjudication, they were permitted to argue it at length; which-was done with much ability. The opinion of the court, consisting of four judges, was unanimous, and was delivered by judge Green, who, with his accustomed ability, investigated the doctrines of the com *279 mon law on the subject very fully, and concluded with declaring that the former decision was right and ought to be adhered to. After this deliberate judgment of the court affirming the principle which had been settled in a former case, I think the question should not have been suffered to be again stirred ; for it must be remembered that this is not a mere question of practice. The principle is in effect a canon of property, and directly involves, in various instances, the title to real estate. It is unnecessary, then, that we should enter into this investigation anew, or follow the counsel through all their learned arguments, though I am well satisfied, if we clicl so, we should arrive at the same result that our predecessors have done. The very enactment of the statute 29. Cha. 2. ch.3. § 14.15. is proof of the fact that by the common law the judgment of the court related back to the first day of the term; and the judgments of the courts, both before and since, shew that this common law principle was without question, and was not even altered' by the statute, except for the protection of purchasers. See Odes v. Woodward, 2 Ld. Raym. 849. 2 Bac. Abr. 731. Bragner v. Langmead, 7 T. R. 20.
But admitting that the judgment relates back to the first day of the term, 1 cannot persuade myself that we ought to consider the term as commencing on the day appointed by law for its commencement, although in point of fact the court was not held until the third day afterwards. There is no analogy between such a case, and the essoin days of the term in the english courts; and the extension of the fiction of relation, to embrace a period when the court was to no intent whatever in session, would be unreasonable and without precedent. I should certainly be averse to any such extension, having in fact very great doubt of the wisdom of the fiction at best; and as there is no precedent to bind me, I shall not be the first to make one. I shall consider the judgment as relating back to the first day of the term, *280 and the first moment of that day ; but I look upon the day on which the court commenced its session as being the first day of the term.
This brings us to consider the deed; for it was executed the day before the commencement of the court; and indeed it was acknowledged by Cunningham, and delivered to the clerk to be recorded, before the term began. It was not therefore overreached by the judgment. It has, however, been assailed on various grounds; all of tvhich it will be proper to examine.
First it is alleged that it was executed with intent to delay, hinder and defraud the plaintiff and other creditors, and so was void under the act for prevention of fraudulent conveyances. I see no evidence of this whatever. A merchant in failing circumstances may, it is admitted, prefer one class of creditors to another, and in doing so he must, in a degree, impede, hinder and even injure other creditors. But the case is not within the statute, which, having excepted conveyances made bona fide and upon valuable consideration, has always been held to permit this preference. The legality of such an arrangement is too well settled to be now called in question. Hendricks v. Robinson, 2 Johns. Ch. Rep. 283, 306. Hopkins v. Grey, 7 Mod. 139. Estiwick v. Caillaud, 5 T. R. 420. Nunn v. Wilsmore, 8 T. R. 521. Meux v. Howell, 4 East 1. M’Menomy v. Murray, 3 Johns. Ch. Rep. 435. M’Menomy v. Roosevelt, Id. 446. Williams v. Brown, 4 Id. 682. Brashear v. West &c. 7 Peters 614. In this last case chief justice Marshall said, “ Such preference, though liable to abuse and to serious objections, is the exercise of a power resulting from the ownership of property, which the law has not yet restrained. It cannot be treated as a fraud.”*
Next it is alleged that the deed is of no binding validity, because it was not assented to by those for whose *281 benefit it was executed, before the lien of the judgment attached; that it was therefore to be considered as a voluntary deed, and, as such, void as to the plaintiff and the other creditors of the grantor. My impressions are otherwise.
Blackstone, following the footsteps of those who went before him, enumerates the various requisites to a valid deed, and among them he places delivery. It is observable, however, that acceptance is not enumerated as one of the essentials. Delivery indeed to the grantee himself implies acceptance by him ; but as such delivery is not always to him in person, the necessity of immediate acceptance is not implied in the necessity of a delivery. Delivery is indeed absolutely necessary to a deed. It is the final act, the formal declaration of the grantor’s determination to complete the conveyance or enter into the contract. See Sharrington v. Shotton, Plowd. 308. “First there is a determination of the mind when a man designs to pass a thing by deed, and upon that the party causes it to be written, which is one part of deliberation; sealing is another, and delivery is the consummation of his resolution.” There is no particular form essential to constitute a good delivery, but any act, I conceive, which conveys the evidence of this consummation of the grantor’s resolution will suffice. On principle, then, it would seem a solecism to say that this last act; or consummation of the grantor’s resolution should depend upon the act of another person, — the grantee. That act indeed cannot compel the grantee to take against his will, but it is, as to the grantor, a complete and consummate act before that will is declared, although it may be avoided by 'the dissent of the grantee. No man indeed can be forced to take an estate against his will; but the law on the other hand presumes that every estate, given by will or otherwise, is beneficial to the party to whom it is given, until he renounces it. Townson v. Tickell, 3 *282 Barn. & Ald. 31. Wilt v. Franklin, 1 Binney 502, 518. And hence the assent of the grantee is implied in all conveyances; first, because of the supposed benefit; secondly, because it is incongruous and absurd that when a conveyance is completely executed on the grantor’s part, the estate should continue in him; thirdly, to prevent the uncertainty of the freehold. 4 Cruise’s Dig. 11. In Thompson v. Leach, 2 Vent. 198. three of the judges held that an estate did not pass by surrender, till the surrenderee accepted it. Ventris differed, and held that it passed immediately, liable to be divested by dissent; and his opinion was followed by the house of lords. Accordingly, while, on the one hand, acceptance is not essential to give validity to a deed, on the other, dissent is one of the modes of avoiding it, laid down in the books. 2 Black. Com. 309. 4 Cruise’s Dig. 494. Now this implies its validity and effect, until avoided by dissent; and hence it is laid down that deeds, immediately upon the execution by the grantors, divest the estate out of them, and put it in the party to whom the conveyance is made, though in his absence and without his notice, till some disagreement to such estate appears. 4 Cruise’s Dig. 11. Of this, indeed, we have many familiar instances. If an estate be conveyed, either by common law or statutory assurance, to A. for life, remainder to B. in fee, the remainder passes at once to B. and upon A.’s death the franktenement will be adjudged in him until he disagrees or disclaims; and by waiving thereof it vests in the donor or bis beir. In like manner a devise vests the title in the devisee until disagreement, and then the dissent has the effect of defeating the devise by relation to the testator’s death. 3 Barn. & Ald. 31. So if an obligation be delivered by A. to C. for the use of B. it is the. deed of A. immediately ; but B. may refuse, and thereby the bond will lose its force. Dyer 49. a. 3 Co. Rep. 26. b. cited 1 Salk. 301. And yet it seems the obligor cannot plead. *283 non est factum (Tawe’s case, Dyer 167. b. Butler v. Baker, 3 Co. Rep. 26. b.) which clearly shews that the bond was his deed and only avoided by the refusal, So if deed of gift of goods and chattels be delivered to the use of the donee, the goods and chattels are in him presently, without notice or agreement; but the donee may make refusal in pais, and by that the property and. interest will be divested. 3 Co. Rep. 26. b.
These principles, we see, are drawn from the very fountains of the law. They have been recently recognized and very fully stated in a case in the king’s bench, vt'hich goes the whole length on this subject. Doe e. d. Garnons v. Knight, 5 Barn. & Cres. 671. 12 Eng. Com. Law Rep. 351. There it was decided that where a party to an instrument seals it, and declares in the presence of a witness that he delivers it as his deed, it is a valid and effectual deed though he keeps it in his own possession, there being nothing in the transaction, except the act of retention, to shew that the grantor did not intend it to operate immediately; and delivery to the party who is to take by the deed, or to any person for his use, is not essential. It is also decided in the same case, that delivery to a third person for the grantee’s use makes the deed effectual from the instant of delivery, although such person be not the agent of the graplee.
These positions appear to me to be peculiarly applicable to deeds which have their effect from the statute of uses. For if the grantor seals, acknowledges and delivers (though not to the grantee personally, or to his agent) a deed setting forth a bargain and sale for valuable consideration, that consideration instantly raises a use, and the statute as instantly executes the possession to that use, and vests the estate in the bargainee, with or without his assent, leaving to him, indeed, the capacity to avoid it at his pleasure by renouncing it, either by reason of the consideration being fictitious, or the *284 duties it imposes onerous and full of danger, as in the case of a deed of trust. Such too I take to be the received and constant practice of the country. Thousands of deeds have been executed by debtors for security of their creditors, and have been carried into effect, without being executed by the trustee. Innumerable deeds of conveyance in the form of indenture have been made, and are now on record in our courts, which have never been signed by the grantees, their acceptance being evinced only by taking possession and other acts in pais. There is no instance in which our courts have decided such deeds to be incomplete and ineffectual, for such a decision would shake every title in the commonwealth. Still less has it ever been deemed necessary that a deed of trust should be executed by the cestui que trust, in order to give validity to its provisions. The instant the legal title becomes vested in the trustee, a trust arises in behalf of those in whose favour it is declared, provided there be a sufficient consideration to sustain it; and from that moment it is beyond the power of the grantor. He cannot revoke it, nor can he even extinguish it by getting a reconveyance; for no act of the trustee can affect the rights of the cestui que trust. If indeed one cestui que trust renounces the trust, then it either enures solely to the;benefit of the rest, or, if there be no others, it results to the grantor. But until the renunciation is made, or implied from circumstances to be made, the trust continues. It arises without any act on the part of the cestui que trust, and in many instances he knows nothing of it until a period remote from the date of its creation. Years indeed may intervene (as in the case of shifting and contingent limitations by way of trust) before it is ascertained who is to be the cestui que trust. Who is to execute the deed in such a case? What would become of trusts in behalf of foreign debtors, or infant wards, or femes covert, or infants yet unborn, if trusts were revocable at any time before *285 actual acceptance by the cestui que trust? They would be futile and nugatory. We must therefore hold that the, execution of the deed by the cestui que trust, is not necessary. We must hold that the deed is good and available on the instant of its execution, and that it can only be avoided by the dissent, express or implied, of the cestui que trust. In what manner that dissent may be declared, or how implied, it is not necessary here to say; though I presume nothing more would be requisite than simple evidence of the fact of disclaimer.
If we apply another test to this question, it would seem equally decisive. The trustee is invested with the legal title. That title is a barrier to the execution upon the judgment at law. The creditor cannot sue out his elegit with effect: he is driven to equity for relief. He has then, but an equity. But the creditor for whose benefit the trust is created has an equity also, and it is prior to that of the judgment creditor. He therefore has a preferable right to demand that the legal title shall be made available for his relief. For a court of equity would never permit the debtor to retract the declaration of trust in favour of his creditor, until it was renounced by the creditor himself; nor would it refuse to compel the execution of the trust in his favour, whenever he should choose to assert his rights. He must therefore have an equity; an equity arising out of and coeval with the deed, and therefore prior to the subsequently acquited judgment of his adversary.
The american authorities upon this subject are somewhat variant, but the great majority of them concur in principles fatal to the pretensions of the appellant. Some hold, that where a deed is beneficial to the grantee, his assent will be presumed until the contrary appears. 2 Conn. Rep. 633. North v. Turner, 9 Serg. & Rawle 244. Gray v. Hill, 10 Id. 436. Smith v. The Bank of Washington, 5 Id. 318. Wilt v. Franklin, 1 Binney 502, Some declare that the subsequent assent of *286 the grantee renders the deed good by relation. 7 Peters 609. 2 Gallison 557. And this would seem conformable with the doctrine as to an escrow, where the sebond delivery relates back to the first and avoids all mesne acts. It seems to have very generally prevailed in relation to assignments for the benefit of creditors, whose subsequent assent has been deemed sufficient to give effect to the deed ab initio. 9 Mass. Rep. 307. 13 Johns. Rep. 285. Marbury v. Brooks, 7 Wheat. 556. Brooks v. Marbury, 11 Wheat. 78. Nicoll v. Mumford, 4 Johns. Ch. Rep. 529.
The learned counsel however has cited some cases from the decisions in Westminster hall, which seem contra, and must therefore be examined. The first of them, and that which has served as the authority for the others, is that of Walwyn v. Coutts, which is briefly stated in 3 Merivale 707. and is to be found fully reported in 3 Simons 14. 5 Cond. Eng. Ch. Rep. 7. In that case the duke of Marlborough conveyed his estates to trustees, for the purpose of paying off the debts of his son the marquis of Blandford, and certain annuities granted by the son, but no debts of his own. The-annuitants were no parties to the deed ; and the duke and his son after-wards joined in executing other deeds varying the former trusts. The motion was on the part of the annuitants, for an injunction to the proceeding under the subsequent deeds. It was refused ; but the reasons of the court are not given. Certain it is that much difficulty exists in reconciling this case with those of Ellison v. Ellison, 6 Ves. 656. and Pulvertoft v. Pulvertoft, 18 Ves. 84. In the first of these cases lord chancellor Eldon said that even if the parties had been pure volunteers, and' not a wife and children, they might have filed their bill on the ground of their interest in the instrument in question, making the trustees and the grantor parties» He took the distinction to be, “ that if you want the assistance of the court to constitute you a cestui que trust, *287 and the instrument is voluntary, you shall have no aid; as upon a covenant to transfer stock, if it rests in covenant, and is purely voluntary, the court will not execute *• ** ^ that voluntary covenant: but if the party has completely transferred the slock, though it is voluntary, yet the legal conveyance being effectually made, the equitable interest will be enforced by the court. The actual transfer constitutes the relation between trustee and cestui que trust, though voluntary and without good or meritorious consideration ; and the court would execute it against the trustee and author of the trust.” The ease of Pulvertoft v. Pulvertoft, 18 Ves. 84, 98. proceeds upon a concessum of the same principles. Now I cannot perceive how the case of Walwyn v. Coutts can be reconciled with these cases : for in that case there was a trust created which, upon the principle of the other cases, could not be retracted or defeated, except by a sale to a purchaser for valuable consideration ; which, according to the english decisions, avoids a previous voluntary conveyance. In Garrard v. Lord Lauderdale indeed (3 Simons 1. 5 Cond. Eng. Ch. Rep. 1.) the vice chancellor attempts to reconcile them, but to my mind not satisfactorily. We shall presently see in what manner he does it. At present it may be remarked that the order in Walwyn v. Coutts seems to have been made without having been much considered, or the reasons of lord Eldon would have appeared in the report of the case. Whether he reviewed the cases of Ellison v. Ellison and Pulvertoft v. Pulvertoft, does not appear.
This case of Walwyn v. Coutts, however, is the foundation on which the other cases rest. The first of them is Garrard v. Lord Lauderdale, 3 Simons 1. There it was decided, upon the authority of Walwyn v. Coutts, that a conveyance by a debtor to trustees for payment of scheduled creditors, who do not execute the deed or conform to its terms, cannot be enforced by the creditors. Now Walwyn v. Coutts decides no such principle. The *288 grantor in that case (the duke of Marlborough) did not make the conveyance for the payment of Ids own debts, but to pay the debts of his son. It was therefore strictly a voluntary conveyance on his part, in behalf of his son anc*- son’s creditors, from whom no consideration moved to him. Admitting therefore his power to revoke that voluntary conveyance, shall it be inferred that he would have bad the power of revocation, if the deed had been in favour of his own creditors for the payment of his own debts, and therefore founded on a most meritorious and valuable consideration ? It would seem not; for on the first supposition, he was only resuming what he had imperfectly given; whereas, on the second, he was attempting to resume what he had in fact paid, away to bona fide creditors. The decision of lord Eldon does not therefore, in this view, justify that of vice chancellor Shadwell. But the vice chancellor seems to think that the marquis of Blandford was, in the second deed, dealing with his own property, and bad a right to pay his own creditors as he thought proper. This appears to me, first, to be a mistake of the fact; for the trustees, after paying the debts, were to stand seized to the use of the father for life, with only a remainder to the son in fee. But suppose the whole estate in him, subject to the trusts; what power could he have over trusts created not by himself but by another, and not out of his own property but the property of that other? Taking as he did under that deed, he must have taken subject to its provisions and to the trusts which it declared. He could have no right to revoke those trusts, whatever might be the rights of his father. Revocation can never be predicated of one who did not himself make the grant. Lord Eldon, then, could have proceeded on no such solecism, but must have acted on the supposed power of revocation in the father, because the trust being voluntary he might vary it as he pleased. This, however inconsistent with Ellison v. Ellison, is at *289 least intelligible; while, on the other hand, it is not comprehensible upon what principle the son could revoke a deed made by the father for the benefit of the son’s creditors.
The next ease is that of Acton v. Woodgate, 2 Mylne & Keene 492. 8 Cond. Eng. Ch. Rep. 97. which was decided upon the authority of Walwyn v. Coutts, and Garrard v. Lord Lauderdale; and if they are overthrown, it is without any just foundation.
The case of Page v. Broom, 4 Russ. 6. is the last to be considered. It is stated in the abstract of the case that where a debtor, by deed poll, directs (inter alia) the receiver of the rents of his estate to keep down the interest of a debt, the direction does not create a trust in favour of the creditor, if it be without consideration and without the privity of the creditor. Upon looking into the case, I can find nothing to justify this report of its principles. It is exceedingly complicated in its facts, and does not seem to me to be very clearly stated. From what appears, I should take it that the deed poll was not held inefficient at all. Nothing is said of its being without consideration or privity of the creditor; but because it was inferiour to the lien of another creditor’s mortgage, it was postponed to that lien. Admitting however that the case was decided according to the abstract, yet it can have no influence upon this case. The estate being already in trustees, and the legal title out of the grantor, the deed poll may have been considered in the light of a power of attorney revocable at the will of the maker, or of an order upon a particular fund not passed into the hands of the drawee, and therefore not operating an equitable assignment of the fund. The deed appears to have been a mere direction to the trustees to apply the surplus to that particular debt. It did not pass the legal title, for that was already in the trustees. Nor did it pass an equitable interest, for there was no decisive *290 evidence upon its face of its intending to do so. It was, at most, equivocal. It might have been designed either fiS matter of contract, in which case there would, upon the principles I have advanced, have been an irrevocable trust; or it might have been intended as a mere arrangement of the maker’s funds, and of course subject to be changed at pleasure. Which was it ? Its features strongly indicated the latter. For the instrument was a deed poll for the direction of the trustees, to which the creditor was not party or even privy, and in its form it was a mere direction to the receivers to pay surpluses towards the discharge of the particular debt, instead of being an authority to the creditor to demand them. Such an instrument may well have been regarded as no contract with the creditor, but a mere direction to the trustees. In this view of the subject, it is clear that the case of Page v. Broom does not decide our case. For here there was an express trust in behalf of the creditors.
Upon the whole, therefore, I am of opinion that the trust deed in this case (unless it was fraudulent in fact or in law) was valid; that it passed the legal title to the trus^ tees, thereby intercepting the lien of the judgment; that the judgment lien thus became a mere equity, and that it was subsequent and therefore inferiour to the equity of the creditors, which attached upon the execution of the deed. Let us next enquire whether there was any thing fraudulent in the deed itself.
I have already said, I can see no evidence of actual fraud in this case. Is there any thing in the deed which renders it fraudulent in contemplation of law ?
The first objection is to the preference of creditors j which has been already examined and overruled.
Next it is said that the deed was a fraud upon the creditors generally, because it demanded a general release of the whole debt of each creditor, upon payment of a part. On this subject a distinction has been made *291 in the cases, between the conveyance of the whole, and the conveyance of part only of the debtor’s property, upon condition that the creditors should compound, and accept a part of their debts, and give a release for the residue. The former is considered admissible and valid, the latter as oppressive upon the creditors, and as fraudulent and pernicious in its tendencies. Seaving v. Brinkerhoff, 5 Johns. Ch. Rep. 332. The english cases are all founded upon the concessum of the principle that such compositions are lawful, where the party has conveyed the whole of his property, and there is no concealment or underhand agreement with particular creditors. Cockshott v. Bennett, 2 T. R. 763. Jackson v. Lomas, 4 T. R. 166. Such compositions are in the spirit of the bankrupt laws, and cannot therefore be branded with the imputation of fraud. “Humanity and policy,” says the chief justice of the United States, “ plead so strongly in favour of leaving the product of his future labour to the debtor who has surrendered all his property, that in every commercial country known to us, except our own, the principle is established by law.” (He means that the principle is established by statute law, and compulsory.) “This furnishes a very imposing argument against its being a fraud.” Brashear v. West &c. 7 Peters 615. It is difficult indeed to imagine on what principle the right of composition, by the assent of the creditors, can be contested, if the right of preference be conceded. He who gives up his all, and who, in doing so, has a right to pay one in exclusion of others, cannot justly be charged with fraud, because he prefers those who humanely surrender all claim to his future labours. To set aside such preference as fraudulént, is to deny the right to prefer-, which on all hands is conceded. Accordingly such agreements, if executed, are acknowledged to be valid and binding. Heathcote v. Crookshanks, 2 T. R. 24. Lynn v. Bruce, 2 H. Black. 317. But it is not less true, that if they are of only part of *292 the debtor’s property, the transaction is oppressive upon the creditors and fraudulent. A debtor is bound by duty to devote the whole of his property to the satisfaction of his creditors’ demands. 7 Peters 614. He can have 110 right, while he is full handed, to extort from them a release of part of their jusL claims. “ Such release is not voluntary on their part, and it is without any other consideration, than the apprehension that by noncompliance they may lose their whole demands. It is induced by the necessity arising from the certainty of being postponed to all those creditors w'ho accept the terms by giving a release. It is not therefore voluntary.” 7 Peters 615. It is a contrivance on the debt- or’s part to protect and secure a part of his property from his creditors, and is therefore distinctly in conflict with that statute which avoids every contractor conveyance of a debtor, contrived of purpose to hinder, delay or defraud his just creditors. He may protect bis person indeed by a fair composition, and a surrender of all his property, but he cannot protect a part of that property by giving up another part. Such an attempt is fraudulent and void. 5 Johns. Ch. Rep. 332.
In this case, however, I think the deed essentially complies with the requirements of the law. The bill itself states that it conveyed the lohole property of the debtor, and the character of the instrument confirms the statement. It is therefore unassailable on the ground just examined.
Next it is said that the deed is fraudulent because of the reservation, out of the trust fund, of the small sum of 350 dollars, for the purpose of paying some “ small debts of high honorary obligation, not then liquidated or ascertained.” This reservation, for so laudable a purpose, out of the avails of a very large and valuable estate, cannot, I think, be void in itself; but I feel assured that it cannot render the deed void as to the creditors who are secured by it. So too with respect to *293 the shares of those who should refuse the composition. It is provided indeed that the surplus, if any, after paying off those who accept the deed, shall be repaid to the grantor; bat until all who accept are fully paid, he is to get nothing. In this respect the case differs, I think, from Hyslop v. Clarke, 14 Johns. Rep. 458. and Austin v. Bell, 20 id. 442. For here the pro rata shares of those who come into the composition are to be increased, whereas in those cases it was otherwise. In the first, the refusal of any vacated the trust as to all; and in the last the shares or propoitions of those refusing were to be paid to the grantor himself, and were not to go to increase the dividend of those who should come into the composition ; and this is a material ground of the court’s opinion. See page 448. Such also was the case of Burd v. Smith, 4 Dall. 76. But be this as it may, l cannot agree that all the creditors are to lose the benefit of this security for the payment of their debts, because an improper provision, deemed fraudulent by construction of law, has been inserted in the deed. I am aware that a distinction has been taken and sustained in some cases, between a deed avoided by statute, and one which is only constructively fraudulent upon equitable principles. 14 Johns. Rep. 458. 20 Id. 442. But I thiuk there is another distinction. Where a deed is made for the security of various creditors, whose claims are distinct and unmingled with each other, and where part are illegal and fraudulent, and another part are fair and untainted with fraud, the security shall not be avoided as to the latter, provided they have given no aid, in any way, to the concoction of the fraud. A deed of that character ought to be considered distributively, and while it is avoided in part, it should be effectuated as far as it is good. If it were otherwise, then a deed of trust to secure the payment of 99 just debts would be avoided by the fact that the hundredth was for usury or gaming; for the statute has *294 declared all gambling or usurious securities to be void. This cannot be: and accordingly this court in the case of Kemper v. Kemper &c. 3 Rand. 8. decided that where the transaction is of such a nature that the good consideration can be separated from the bad, the court will separate them, and consider the deed valid so far as it is entirely distinct from and unaffected by the illegal consideration. So in Skipwith v. Strother &c. 3 Rand. 214. where part of a bond was for gaming: and so in Fleetwood v. Jansen, 2 Atk. 467. there cited, a mortgage, in part for money lost at play, was avoided as to that, but held as a security for what was justly due. I am aware, indeed that in Garland v. Rives the deed was avoided in toto; but there a gross fraud was committed upon the creditor, and the case affords no precedent for the case at bar. But even in that case judge Green admits that a deed may be good as to part of the grantees, and void as to others. 4 Rand. 309. As where a deed is made to secure a just debt, and the equity of redemption is reserved to a stranger or to the family of the debtor; such a (leed would be valid as to the creditor, but void, in respect to other creditors, as to the reservation of the equity of redemption. Ibid. So here, the deed is truly of no effect as to other creditors in so far as the surplus goes, but it is valid and available as a security to the creditors specified, and those assenting to the composition.
Next it is said that the creditors are delayed by this deed. This objection admits of a like answer with the last. But it may be added that a like objection was made and overruled in the case in the supreme court of the United States, already cited. 7 Peters 615. It was carefully considered by the court, wdro felt its force. But the chief justice observed that “the property is not entirely locked up. A court of equity will compel the execution of the trust, and decree what may remain to those creditors who have not acceded to the deed.” *295 He then proceeds to examine the Pennsylvania, decisions upon the point, and though he obviously felt a difficulty, yet he followed them in affirming the validity of the deed. I am not aware of any material difference between the law of .Pennsylvania and that of Virginia on this subject, and I therefore incline to think the cases are entitled to some respect. But I acknowledge that, independent of them, I cannot believe that a mortgage or deed of trust is void because the mortgagor or debtor, after providing for the payment of the debt, declares the residue to be for his own use. Such is the ordinary course of all transactions of that kind, and to impeach them would be to avoid every mortgage or security given by an embarrassed debtor.
I have now waded through all the questions iu the case, save one; and in that only do I find error. I think it very clear that the appellant had a right to an account of the trust fund, and to the payment of his debt out of the surplus, if any, after satisfying the scheduled creditors and those who acceded to the composition. I am of opinion, therefore, to reverse the decree, and send the cause back for an account and further proceedings.
Decree reversed, proceedings. and cause remanded for further

 Note by the president. A case to the same effect [M’Cullough v. Sommerville, reported post.] was decided in the court of appeals at Lewisburg, in July 1836.