### Case No. 4,980.

FOSTER et al. v. The PILOT NO. 2.

[1 Newb. 215;[1] 1 Am. Law Reg. 403; 5 Pa. Law J. Rep. 231.]

District Court, W. D. Pennsylvania. Jan., 1853.[2]

---

[1] [Reported by John S. Newberry, Esq.]
[2] [Reversed in Case No. 5,199.]

Mr. Pinney, for libelant.
Mr. Stanton, for respondent.

IRWIN, District Judge. On the 7th day of December last, several bills were filed by James Foster and others, for wages alleged to be due them as mariners of the steamboat Pilot No. 2, belonging to the port of Pittsburg. On the same day, the marshal seized the vessel by process in favor of said libelants, and has since held it in custody to answer their claims, and to await the adjudication of this court. Prior to the time when the said libels were filed and the attachments served, the said steamboat was taken in execution by the sheriff of Alleghany county, upon judgments obtained in the district court of said county, against the owners, and after due notice, it was on the 18th day of December, publicly sold by the said sheriff to B. McBride, for the sum of seven hundred and sixty dollars. On the 21st of December, the said McBride, as intervener, answered the several libels, from which it appears that as purchaser at sheriff's sale, he claims to hold the said steam vessel discharged from any lien which may have existed prior to the sale, and from the claims of the libelants, who are denied to have been mariners in said vessel as is asserted in the' said libels, which, therefore, he prays may be dismissed, and the libelants condemned in costs, &c. At the hearing no proof was offered in support of the latter allegation, but it was contended that two of the libelants named, Alexander Woods and Jacob Gallatin, whose claims' for wages amounted to the sum of five hundred and eighteen dollars and sixty-three cents, were before and after the voyage last made by the steamboat, and at the time of filing their several libels, its part owners, and that the judgment and execution upon which it was sold, were against the said Woods and Gallatin, as well as against the other part owners. and that, therefore, they have no lien thereon for wages or otherwise. So much of the answer as alleges the part ownership of the vessel by Woods and Gallatin at the time mentioned. is admitted to be true, but it is denied that their claim as mariners of the said vessel for wages due and their lien as such mariners can in any manner be affected by such part ownership. This is the only question for consideration.

There are principles of law governing mercantile partnerships which in argument are supposed to involve and settle the points raised by the answer adversely to the claim of the libelants. But it is unnecessary to inquire what would have been the legal effect of the disputed claims if creditors of the partners of the steam vessel claiming by liens inferior to that of wages or claiming in personam had intervened to contest the claims for wages or to inquire whether part owners not parties to the libel, could successfully intervene to resist the claims for wages of their copartners, on the ground that such claims, like all other claims between partners in relation to services to the partnership, or connected with the partnership property, can only legally be adjusted and determined according to the law of partnership. Neither creditors nor part owners have intervened; but had either or both events occurred, it must not be inferred that such intervention, under the circumstances supposed, would be regarded as a legal obstacle to the mariner's claims for wages. It is not meant, however, to say more than what properly belongs to the case under consideration. as it may be affected by the proofs exhibited, the principles of maritime law, and as in principle it is distinguished from that assumed in argument. The respondent is a purchaser of the steam vessel subject to liens for mariner's wages, and as no one else intervened to contest those liens, the inquiry will be confined to what he has set forth in his answer as above noticed, and the proofs and the law which sustain the claims of the libelants.

The claim of mariner's wages has a priority above all other claims against the vessel, the freight. and the proceeds of both, into whosesoever hands they may come. It is a permanent lien, and secures to the mariner for his wages, a preference above all other persons, and may be enforced in admiralty against a bona fide purchaser, without regard to the title through which the purchaser claims. The respondent purchased the steam vessel at sheriff's sale, eleven days after it had been libeled, and was in custody of the marshal, and while the libelants were proceeding in this court to enforce their liens. He cannot, therefore, allege with truth, that when he purchased her he had no legal notice of these claims. But with or without notice. if all the libelants were mariners, and were all entitled to wages, their lien against the vessel, after as well as before sale. is unquestionable. But whilst this is not denied as a general principle, it is contended that two of the libelants, though they might have been as alleged, employed as mariners in the vessel, yet as part owners of it. they could not by any known principles of law. proceed by libel in admiralty for the recovery of wages: that all the owners of the vessel were debtors for wages, and all equally liable: that the-

libelants could not separate themselves from other part owners, and assert a separate claim against the partnership property, which, in effect, would be to claim against themselves as well as against their copartners, nor could they claim against a bona fide purchaser of the partnership property under a judicial sale: that such claims for services to the partnership in a steam vessel or otherwise, might be met with similar or equally good claims by other part owners, and that their separate or mutual charges and accounts can only be legally settled by the law of partnership. It was further urged that, if part owners of a vessel had in admiralty a lien for wages as mariners, the right would extend to all other admiralty liens to the exclusion of creditors, and thus open a door to fraudulent claims, which, in most instances, it would be impossible to expose, or successfully resist. The argument in this case is specious, but unsound. The owners of a steam vessel must, from necessity, in a voyage of that vessel, be subject to mariner's wages; and, if it should happen that one of their number should be employed as a mariner, such employment would be in a capacity distinct from, and unconnected with the appropriate business of a partnership of that nature, the object of which is either to let the vessel out to freight, or for mutual adventure in vessel and cargo. As one of the crew, his name would regularly be included in the shipping articles for the voyage; and either by them or other contracts, his station and rate of wages would be determined; and while subject to all the penalties and forfeitures, prescribed by the act of congress for a failure to perform his duties as a mariner, he would, as such, be entitled to the stipulated wages, and the triple remedy which the law provides for enforcing its payment: a lien upon the vessel, the freight and the proceeds of both, regardless of partnership relations and liabilities, unless by express contract another way of securing his wages had been provided. Without such an agreement, it would be fair to infer that his copartners in a vessel regarded his right to wages as unconnected with, and beyond the control of the partnership. In pursuing the remedy by libel, it would, therefore, be enough for the libelant to show, by the shipping articles or otherwise, that he shipped as a mariner, and, as such, was entitled to wages, and that his wages were due and unpaid. The act of congress, which secures this right, is in accordance with the policy and usages of maritime law, which regards, with peculiar favor and tenderness, the situation of seamen, by giving them a lien for wages paramount to all other claims, and a summary remedy for enforcing the right, unaffected by collateral matters, or common law pleadings. But whatever doubt there may be as to the remedy, when a vessel is owned by several in strict partnership, there can be none in a case where they they are merely part owners, as the respondents are alleged to be in the answer, and as they must be taken to be in the absence of all controlling circumstances. The general relation of part owners of a vessel, is that of tenants in common and not as copartners; they are, therefore, not liable in solido, nor entitled, in the settlement of their accounts, to be governed by the principles of partnership. Nicholl v. Mumford, 4 Johns. Ch. 522; 2 Johns. 611. There are exceptions, but this case is not one of them; and as liens may arise either from express or implied assignments, it is but a reasonable presumption, when not opposed by special or express contract, that part owners do not intend to rely solely upon the personal responsibility of each other, to reimburse themselves for expenses and charges incurred upon the common property for the common benefit, but that there is a mutual understanding that they shall possess a lien in rem. Story's Partn. 444.

The navigation of the western waters by steamboats is often attended with more than ordinary risk and loss; to lessen such risk, it is not unusual for those about to engage in such business to unite in partnership with one or more persons, known to be skillful and trustworthy mariners, whose interest in the vessel, though generally small, is always sufficient to call into action the greatest amount of vigilance, ability and care of which they are capable, an advantage which it would be vain to expect from mariners bound to their duty only by the prospect of ordinary wages. The law, as explained, harmonizes with this policy, by giving to a mariner, though a part owner of a vessel, a maritime lien for his stipulated wages, while it does no injustice to another part owner, or to their creditors, since it adds nothing to the wages which must necessarily be incurred in a voyage. The creditors are generally such as have claims for repairs to a vessel, or for materials furnished, and have often no other security for payment than the lien which the law gives them upon the vessel. Both part owners and creditors have a deep interest in its safe return; and when, to the usual means of promoting that object, is superadded the connection of mariner and part owner, it may be safely assumed, that it would be impolitic, unjust, and contrary to the principles of maritime law, to deny to the mariner his claim for wages. Upon full consideration, made the more necessary from the absence of a reported case of a similar nature, I feel satisfied that the claims of the libelants are fully sustained by the proofs and the law. Decree accordingly.