WHEELER *v.* EMERSON.

Where promissory notes were indorsed and assigned by the principal, severally, to certain of his creditors, as collateral security, and placed in the hands of the trustee, to be delivered, but before any delivery the trustee was summoned in this suit;—*Held*, that no interest was acquired, as against the attachment, by such creditors, until a delivery had been made, or assent given; and that an assent or delivery, after the attachment, would not defeat it.

Where some of the creditors, upon being informed, by the trustee, of the assignment, assented to it, and proposed to take such securities, but the trustee declined to deliver them until a previous trustee suit was disposed of, and promised then to give them up;—*Held*, that the assignment was perfected as against a subsequent attachment, although the securities were not actually delivered over.

Where mortgages were assigned to the trustee, to indemnify him for his liabilities on account of the principal;—*Held*, that the trustee was entitled to hold them for his liability as surety on the principal's administration bond, he having been charged by a decree of the probate court, for a balance, consisting of money due from the principal to the deceased, in his life-time.

An assignment to the trustee, by the principal, for the use of his wife, to secure her for money belonging to her, and which the assignor had before that time used, is not valid against an attachment, unless it be shown that such money was held by the wife to her sole and separate use.

IT appeared by the disclosure of the trustee, Benjamin F. Emerson, who is a brother of Edward Emerson, the principal defendant, that on the 28th of December, 1860, said Edward being in embarrassed circumstances, and about to leave the State, and being indebted to the trustee, who was also liable as surety for said Edward to a con-

siderable amount, mortgaged to the trustee certain real and personal estate, to secure his debt and liabilities, and that said Edward at the same time left in the hands of the trustee certain negotiable promissory notes, indorsed by the payees thereof, for certain persons to whom said Edward was indebted to the amount of the notes so left for each person, and also left in the trustee's hands, at the same time, certain notes and mortgages for other creditors of said Edward, said notes being indorsed as aforesaid, and the mortgages assigned by said Edward to the persons for whom they were left, said assignments being in writing, under seal, and executed by said Edward, when so left, and all being left for said creditors unconditionally.

On the 30th of said December said trustee inclosed some of said notes in envelopes, and directed the envelopes by name to the persons for whom the notes were left, and so left them in the hands of the wife of said Edward, but without any direction to that effect from said Edward, to be handed or sent to the persons to whom they were directed, she living in the vicinity of such persons.

Early in the morning of December 31, 1860, a trustee writ, in favor of Nathan Willoughby against said Edward, was served on the trustee in this suit. The trustee thereupon notified Mrs. Emerson not to deliver said notes or envelopes, as he had been trusteed. During the forenoon of said December 31, one Hardy, for whom one of said notes was left, so directed as aforesaid, and to whom an amount greater than the note was due, called on the trustee, and asked for whatever note was so left for him. The trustee, having the same then in his hands, declined to deliver it on account of said trustee process, saying he should have it if it was not held in that process. During the same forenoon one H. W. Willoughby, to whom one of said envelopes was directed, called on Mrs. Emerson for what was left for him, but she, having said notes and envelopes in her possession, declined to deliver them, on account of the said instructions she had received from the trustee to that effect. At noon, on said 31st of December, the writ in this action, and also one other writ, were served on the trustee. By agreement, the trustee has been discharged in the said suit in favor of Nathan Willoughby. The other persons for whom the securities were so left did not, previous to the service on the trustee in this action, have any communication with said Edward, his wife, or the trustee, relative to said securities, but since said service nearly all of them have expressed a desire to accept the securities left for them.

On the 27th or 28th of said December, said Edward assigned and indorsed to the trustee, and placed in his hands, two notes and mortgages, given to secure the same in trust to the use of said Edward's wife, which assignments are as follows:

"Be it remembered that I, Edward Emerson, in consideration of one dollar, to me paid by Benjamin F. Emerson, do hereby assign and transfer to him the said notes and mortgages, to hold the same for the use of my wife, for her sole and separate use, free from my control and interference; the intent hereof being to secure her for money I have used belonging to her; and in case the same can not be legally held for her use, then to be held for security of what I

owe said Benjamin F., and for what he is held for me as surety; which notes and mortgages are now in the hands of the trustee."

Part of these liabilities of the trustee was on account of his suretyship for said Edward on two bonds, on which said Edward was principal; on one as administrator, and on the other as executor; which trusts said Edward has resigned, and which have been settled in the probate court; a decree having been made therein, charging said Edward for a balance, which consisted of money due from said Edward to the deceased in their life-time.

The foregoing statement of facts was agreed to for the purposes of this case only, and it was also agreed that either party, so electing, might have this case discharged, and proceed to determine the liability of said trustee upon the whole disclosure of the trustee, or by the jury.

*Sawyer & Stevens*, for the plaintiff.

I. The transfer or assignment of the choses in action to the several creditors, was inoperative and void, as against creditors. Even between the parties, it was inoperative on the day when this writ was served on the trustee. (1) Because these choses in action were not accepted by the creditors; there was no concurrent intention, on their part, to accept. (2) Because the transfer was made directly to a creditor, and not to a trustee, and no trust estate could be created in the hands of this trustee. Therefore the property did not vest immediately upon the transfer, nor after, as against this trustee process. 4 Johns. Ch. 522; *Jones* v. *Dougherty*, 10 Geo. 273; *Widgery* v. *Haskell*, 5 Mass. 153. (3) The transfer was revocable, until accepted, by the creditor, and the property remained in the debtor until the creditor accepted. Chit. on Cont. 615, sec. 5; *Widgery* v. *Haskell*, 5 Mass. 150.

II. The doctrine of assent, when a benefit accrues to the creditor, does not apply in this case. (1) Because no assent of the creditors for whom these choses in action were designed, can be presumed against another creditor pursuing his remedy at law. *Spinney* v. *Hosiery Company*, 25 N. H. 16; 5 N. H. 129. (2) Because no assent can be presumed in a transfer, or assignment, to a part only of a debtor's creditors. *Everett* v. *Wolcott*, 15 Pick. 97. (3) Because it does not appear affirmatively that the debts of these creditors were to be paid in full. Even in a case where a trust estate has been created, and the property thereby vests immediately in the trustee, it must so appear, in order to presume an assent, *a fortiori*, when the transfer is to a part only of the creditors, and in form directly to them. 25 N. H. 16. (4) No creditor, in terms, had consented to the transfers, or assignments, except perhaps Hardy and Willoughby, when the service was made on the trustee in this case. Until a creditor assents, the property remains the debtor's, so far as to be liable to the attachment of another creditor. If the property does not pass by the assignment, when executed, it can never after pass by virtue of such conveyance, so as to defeat an intervening attachment by another creditor. Suppose the assignments were made to the use of a creditor beyond sea, how long must another creditor

wait to learn whether or not an assent is given ? Before the acceptance by that creditor, we submit, the debtor may, at his pleasure, dispose of the choses in action, to any other creditor, or person ignorant of the prior conveyance. *Ward* v. *Lamson*, 6 Pick. 359; *Bradford* v. *Tappan*, 11 Pick. 78 ; *Widgery* v. *Haskell*, 5 Mass. 150; *Andrews* v. *Ludlow*, 5 Pick. 30; *Brewer* v. *Pitkin*, 11 Pick. 300; *Boyden* v. *Moore*, 11 Pick. 363; *Copeland* v. *Weld*, 8 Greenl. 411; *Stevens* v. *Bell*, 6 Mass. 343; *Wiley* v. *Collins*, 2 Fairf. 194.

III. The transfer, or assignment, by a husband to his wife, of his property, or of her property after he has reduced it to possession, is inoperative and void against creditors ; because, upon marriage, he becomes the absolute owner of all her personal property in possession, and becomes entitled to the rents and profits of the chattels real, and the income of all her real estate, and of her choses in action, if he reduce them to possession. The marriage cancels all debts due from husband to wife, and from wife to husband. *Judge of Probate* v. *Chamberlain*, 3 N. H. 130 ; *Burleigh* v. *Coffin*, 22 N. H. 118; *Cram* v. *Dudley*, 28 N. H. 537; *Wells* v. *Tyler*, 25 N. H. 340. If the husband has once reduced his wife's choses in action into possession, his creditors are entitled to the benefit of them. *Poor* v. *Hazelton*, 15 N. H. 564. So if the husband had reduced his wife's distributive share to possession, it can be held in a trustee process. *Wheeler* v. *Moore*, 13 N. H. 478. Where land of a wife was sold, and a note for the avails was taken in her name, it was held such note, when made, was the property of the husband, and no agreement between them could be made during coverture which in legal effect would transfer, by way of gift or sale, the property in the note, from the husband to the wife. 15 Conn. 587.

IV. The sureties in the bond named in this case are not liable, because the debts were due from the administrator personally, as a debtor of the estate, and not in his capacity as administrator.

*B. F. Emerson*, for the trustee.

1. The indorsement of the notes for certain creditors of the principal defendant, by him, and the delivery of them to the trustee, unconditionally, for such creditors, was a valid delivery to them, and vested the title in them, subject to their right to refuse to accept them, as it was manifestly for their advantage. *Spring* v. *Hosiery Co.*, 25 N. H. 18; *Holsey* v. *Fairbanks*, 4 Mason 214.

2. An assignment for the benefit of creditors, unconditional, is presumed to be accepted, until the contrary appears, and will be good against intervening attachments and liens. U. S. Dig., vol. 18, p. 81, secs. 133, 139, 140; vol. 16, p. 72, sec. 67; vol. 13, p. 56, 88, 89, 103; vol. 8, p. 31, 75 ; vol. 7, p. 52, 63; vol. 4, p. 173, 306, 307; vol. 1, p. 259, 368, 369, 375; vol. 1, p. 263, 433; vol. 9, p. 47, 69, 70.

3. The assignment of the notes and mortgages being apparently for the benefit of the assignees, took effect from the moment of the delivery to the trustee. *Boody* v. *Davis*, 20 N. H. 140; *Corning* v. *Pinkham*, 1 N. H. 375, and cases there cited ; *Buffum* v. *Green*, 5 N. H. 71; *Cook* v. *Brown*, 34 N. H. 460; *Parker* v. *Dustin*, 22 N. H.

432, and *Doe* v. *Knight,* there cited; U. S. Dig., vol. 10, p. 124, sec. 25; vol. 10, p. 128, sec. 40; vol. 8, p. 92, sec. 11; vol. 9, p. 123, sec. 13; vol. 14, p. 155, sec. 19; vol. 12, p. 169, sec. 23; vol. 4, p. 523, sec. 70; vol. 4, p. 524, secs. 78, 88, 90.

4. Even if the delivery might have been revoked by the principal defendant, it was good till revoked. 1 N. H. 357. In many of the cases cited there was the same opportunity as in this. It was enough that it was not revoked.

5. An assignment is good for one or any part of the creditors, where it would be for the whole. 12 U. S. Dig., p. 58, secs. 48, 49; p. 47, sec. 69.

6. No more formal delivery of a chose in action can be necessary, than of a deed, so that all cases which tend to show that a delivery of a deed to a third person is good, are equally authorities to show the delivery of the notes good.

7. A note was left for Hardy and another. He assented before the service of the writ in this case. Willoughby also assented before the service; and if there be any doubt as to the others, it is submitted that those claims can not be held by this process.

8. The wife's claim is as equitable as any other person's. All the recent decisions in this State protect her interest as far as possible. *Hall* v. *Young,* 37 N. H. 134. Having received her property, it is contended that he may restore it before other rights attach. The trustee process is an equitable process; 12 N. H. 114; and nothing can be held in the hands of the trustee which there is an equity in his retaining; and this applies as well to others' equitable rights as his own. It is a well settled principle of equity, that where an equitable proceeding is necessary to reach property in which a wife has an interest, suitable provision be made for her.

9. The sureties in the probate bonds are liable for debts due from an administrator to the deceased at the time of his decease. Comp. Stat. 407, sec. 9. The papers left with the wife of the principal defendant were left with her as the agent of the trustee, and remained the same as if they had never been out of his hands.

BELLOWS, J. Under the circumstances of this case we think that nothing had passed to these creditors, except Hardy and Willoughby, before the service of this process, and that the lien of this plaintiff was not affected by the subsequent assent. It is not like a case of an assignment to a third person in trust for creditors, with an acceptance of the trust and a promise to execute it; in which case it has been held that the legal estate passes, and vests in the trustee; and a court of equity will compel an execution of the trust. 2 Kent Com., secs. 533, 729. But this is a case where the assignments are directly to the creditors themselves, and have never been delivered, or assented to. It is true they were placed in the hands of the trustee to be delivered; but until a delivery or its equivalent the trustee's authority could at any time be revoked by the assignor; he, the trustee, being the agent of the assignor, and in no sense the agent of the creditor. It stands, indeed, like a case where the principal places money in the hands of his servant or agent, to pay a

debt; and until it is paid the money must be regarded as still in possession of the principal, and subject to his direction. So in this case, the trustee being merely the servant or agent of the debtor, and in no privity with the assignee, nothing passed from the assignor, but a power which he might at any time revoke.

The cases cited for the trustee in respect to assignments to third persons, in trust for creditors, do not, for the reasons suggested, apply here, and it is therefore unnecessary to determine where is the weight of authority upon the vexed question, whether in such cases the assent of creditors will be presumed; because we are satisfied that where the transfer is directly to the creditor, his assent must be shown. 2 Kent Com., 9th ed., secs. 533, 729, note c; *Nichol* v. *Mumford*, 4 Johns. Ch. 529. In *Williams* v. *Everett*, 14 East 582, where funds were remitted to a house in London to be applied to the payment of certain creditors of the sender, one of whom was the plaintiff, who, on being advised of what was done, called upon the agent and asked for payment, which was declined, he refusing altogether to act upon the directions received; in a suit against the agent, for money had and received, it was held that it would not lie — the court upon full consideration deciding that until the agent had come under some engagement to the creditor to apply the assets, the directions might be countermanded, and therefore they were held to the use of the remitter.

A similar doctrine is laid down in *Acton* v. *Woodgate*, 2 Mylne & Keene 492, and *Smith* v. *Keating*, 6 M. G. & S. 136, 158; *Harland* v. *Binks*, 15 A. & E. (N. S.) 713, and cases cited, and note; and the doctrine in those cases is applied to cases where the assignments were to third persons in trust. The case of *Oxnard* v. *Blake*, 45 Maine 602, is also in point. There it was held that where there were several mortgages to different creditors, as collateral security, made by the debtor, and recorded without the knowledge of such creditors, the one that is first ratified will have priority. The cases of Hardy and Willoughby, however, stand upon different ground, for the facts stated show an assent to the assignments to them, which will give them effect against the attachment. *Harland* v. *Binks*, 15 A. & E. (N. S.) 713. That was an assignment to a third person in trust, for such creditors as should come in and execute the deed; and under it the trustee took possession. A creditor applied to the trustee for an explanation, and having received it, he said he was satisfied, and took no steps to obtain payment; and it was held that this was a sufficient assent.

In respect to the assignment in trust for the wife, enough is not stated to enable the court to decide; for it does not appear whether the money of the wife which was used by the husband was so held by her that he could have reduced it to possession; or whether he did or did not attempt to do so. Had the money been held by the wife to her sole and separate use, and used by the husband without authority, he might have been compelled to restore it. Clancy on Husband and Wife 350, 354. On the other hand, if not held to her sole and separate use, and the husband had once reduced it to possession, it would be difficult to see how any obligation to refund

it could afterward arise. What the facts are is not stated, and a further examination of the subject would not be profitable.

The only question remaining is in respect to the pledge to the trustee, and that must turn upon the point, whether the administration bond extends to the debt due from the administrator to the intestate. By statute, a debt due the intestate from the administrator is assets in his hands, and must be accounted for, as other debts; Comp. Stat., ch. 168, sec. 9; and the decree of the probate court charges the principal debtor with the amount of such debts; and we must presume that he was rightfully charged. Under such circumstances the sureties would be held. In *Gookin, J.,* v. *Hart,* 3 N. H. 392, it was laid down that a suit may be maintained upon a probate bond, "where the executor or administrator, having assets, and being bound by law to pay a debt, neglects or refuses to pay it when demanded; or where he neglects or refuses to pay on demand a dividend ordered by the judge of probate, by a decree of distribution of an insolvent estate, to be paid to a creditor;" or where he neglects to pay on demand to an heir, a share in the estate ordered by the judge of probate to be paid; and so it is held in *Judge of Probate* v. *Heydock,* 8 N. H. 491, where it was held that the sureties in an administration bond were liable for the proceeds of land sold in another State, and which the administrator was directed by the probate court of that State to pay to such persons as the probate court in this State, where the will was originally proved and allowed, should direct; the administrator having been charged with the amount in the settlement here of his administration account. This was put upon the ground that upon the decree of the Vermont court, to pay the money according to the decree of the court where the principal administration was, it at once became assets in his hands here, which he was bound to account for according to his bond, although the sureties might not have anticipated it when they entered into the obligation; and the court held the decree of the probate court here to be conclusive, although it did not appear whether the proceeds of the Vermont administration were actually transferred to their jurisdiction or not, or whether they were squandered by the administrator before the decree of the Vermont court of probate. So in this case, the debt due from the administrator is by law assets in his hands, and the amount is fixed and determined conclusively, as against the administrator, by the decree of the probate court, to be paid to the creditors, or to the heirs and legatees; and for a neglect to account for it according to law, the sureties must be liable on their bond. See, also, *Smith* v. *Jewett,* 40 N. H. 513; *Gottinger* v. *Taylor,* 19 N. Y. 150; *Gottinger* v. *Smith,* 5 Duer 566, and *Potter* v. *Titcomb,* 7 Greenl. 302.

Whether it is open to the sureties to show that the claim of the estate against the administrator was, ever since his appointment, of no value by reason of his insolvency, as held in *Harden* v. *Joick,* 2 Stockt. Ch. 269 (N. J.), and *Piper's Estate,* 15 Penn. 533, and *Gottinger* v. *Smith,* 5 Duer 566, it is not now necessary to inquire, as no such state of things is suggested.

Let these views be certified to the trial term for further proceedings.