ERNEST BROCKMEYER v. THE WASHINGTON NATIONAL
BANK.

BANKS — *Right to Withdraw Deposit.* Where a bank delivers to another
bank money and securities to pay a creditor, and the account is kept
in the name of the depositing bank or its owner absolutely, and not
as trustee for the creditor, the bank making the deposit may with-
draw it at any time before the creditor has notice of the transaction.

*Motion for Rehearing.*

THE material facts are stated in *Brockmeyer v. National
Bank*, ante, pp. 376, *et seq.*, and in the opinion herein, filed at
the session of the court in April, 1889.

*A. S. Wilson*, for plaintiff in error.

*Omar Powell*, for defendant in error.

*Per Curiam:* The opinion heretofore filed in this case is
seriously disputed. (*Ante,* pp. 376, *et seq.*; same case, 19
Pac. Rep. 855.) It is again claimed that although Brock-
meyer had no knowledge or notice of the deposit of moneys,
drafts, etc., in the Washington National Bank to pay the lia-
bilities of the German Savings Bank, that Knowles, who was
in fact the German Savings Bank, had no authority to with-
draw the deposit, or revoke the order given to the Washing-
ton National Bank to pay the claims of the German Savings
Bank. Notwithstanding the cases cited and referred to, we
think the views expressed in our former opinion do not re-
quire modification or change. In the former opinion, a por-
tion of § 1045 of 2 Story Eq. Jur. was quoted, and § 1046
reads as follows:

"It is true that in every case where a consignment or re-
mittance is made, with orders to pay over the proceeds to a
third person, the appropriation is not absolute; for it amounts
to no more than a mandate from a principal to his agent, which
can give no right or interest to a third person in the subject
of the mandate. It may be revoked at any time before it is
executed, or at least before any engagement is entered into by

the mandatary with the third person to execute it for his benefit; and it will be revoked by any prior disposition of the property inconsistent with such execution. But if no revocation is made, and the mandate continues in full force, the trust of such continues for the benefit of such third person, who, after his assent thereto notified to the mandatary, may avail himself of it in equity without any reference to the assent or dissent of the mandatary upon such notice; for his receipt of the property binds him to follow the orders of his principal."

We find in vol. 3 of Pomeroy's Eq. Jur., the rule to be declared as follows:

"Although, whenever a debtor in the manner above described makes to his creditor an equitable assignment of a specific fund or debt in the hands of or owing by a third person, the assent of such third person is not requisite to the effect of the transfer in equity, yet the assignment, appropriation, direction or order is not absolute, but may be revoked by the *debtor-assignor* at any time before the *creditor-assignee* has been notified of it, and has expressly or impliedly assented thereto. In such a case, notice to and assent by the *creditor-assignee* are essential to an absolute assignment." (Sec. 1281.)

"In all cases, even when the assignee was not a creditor of the assignor, the order must be delivered to the intended payee, or he must be notified of it by the drawer's procurement, in order that it may operate as an equitable assignment. A mere letter, communication, or other mandate to the agent, depositary or debtor, directing him to pay the fund to a designated person, will not of itself operate as an assignment; but it may be withdrawn or revoked at any time before the arrangement is completed by information given to the intended payee by or on behalf of the drawer. What shall amount to the present appropriation which constitutes an equitable assignment, is a question of intention, to be gathered from all the language construed in the light of the surrounding circumstances. For example, while it is not essential to the existence of an equitable assignment of a fund that the debtor, agent or depositary should be expressly directed to pay over the money to the assignee, the absence of such a direction may tend to show an intention not to transfer a present interest in the fund, but that the arrangement is wholly executory and prospective." (Sec. 1282.)

In support of the rehearing, several cases are cited that an

irrevocable trust may be created for the benefit of a third person without his knowledge at the time, but most of the cases are conveyances of real estate, in which the consent of the grantee or beneficiary is presumed, until he expresses his dissent, or refusal. (See *Skipwith v. Cunningham*, 8 Leigh, 271 — 31 Am. Dec. 642; *Field v. Arrowsmith*, 3 Humph. 442 — 39 Am. Dec. 185; and *Shepherd v. McEvers*, 4 Johns. Ch. 136 — 8 Am. Dec. 561.) In all of these cases the deed passed the legal title of the estate to the trustee, and it was decided that the law presumes every estate given by will, or otherwise, is beneficial to the party to whom it is given until he releases it; that therefore the assent of the grantee is implied in all conveyances — first, because of the supposed benefits; secondly, because it is incongruous and absurd that when a conveyance is completely executed on the grantor's part, the estate should continue in him; and thirdly, to prevent the uncertainty of the freehold. In the other cases referred to, the debtor-assignor had parted with all control of the specific fund, money or property assigned or transferred. If we should approve all of these decisions, it would not necessarily follow that Brockmeyer was entitled after the revocation of the order to the Washington National Bank, to recover of that bank any part of the deposit which had been withdrawn.

The petition shows that Knowles kept two accounts with the Washington National Bank, "one in the name of E. C. Knowles, and one in the name of the German Savings Bank; that amounts of $2,450.15 and $4,073.35 were placed to the credit of the account kept in the name of the German Savings Bank; that on the 17th day of June, 1884, the account of the German Savings Bank with the Washington National Bank showed a balance in favor of the German Savings Bank of $6,126.82, which was $1,951.93 more than was necessary to pay the claims against that bank; and that on the 17th day of June, 1884, the Washington National Bank transferred the balance due the German Savings Bank to the account kept in the name of E. C. Knowles." It is conceded that E. C. Knowles was the owner of the German Savings Bank; and

therefore, as the money, drafts, notes, etc., of the German Savings Bank were deposited in the Washington National Bank in the name of the German Savings Bank, Knowles never placed himself in such a position that he could not revoke his order to the national bank to pay the claims of the German Savings Bank, if the revocation was made before Brockmeyer was notified of the deposit: hence we think this case is very different from the cases referred to in the decisions concerning real estate where the legal title became vested in a trustee, and from that moment the title was beyond the power of the grantor. If the deposit or transfer by the German Savings Bank to the Washington National Bank had been intended to be absolute, the account would have been kept in the name of the Washington National Bank as trustee for the creditors of the German Savings Bank, or the deposit would have been placed in the name of the creditors.

We think, as was stated in the former opinion, that the German Savings Bank, or its owner Knowles, had the authority to revoke his arrangement with the national bank about paying the creditors of the German Savings Bank at any time before they had knowledge or notice thereof.

The motion for rehearing will be overruled.