Standish v. Babcock.

# WILLIAM P. STANDISH

*v.*

## FREDERICK A. BABCOCK and CAROLINE M. BABCOCK.

1. When trust funds are fraudulently misappropriated in paying off a mortgage, the *cestui que trust* has a right to have the debt incurred by the misappropriation charged on the land which has been relieved from encumbrance by the fraudulent use of his money.

2. No person can derive a benefit from a misappropriation of trust funds, unless he shows that he acted in good faith and paid full value.

3. The separate creditor of a member of a firm stands, as to his debtor's interest in the partnership property, in the place of his debtor, and can take nothing which his debtor is not entitled to.

4. Each partner has an equitable lien on the partnership property for the purpose of having it applied to the payment of the partnership debts, and also on the whole surplus assets for his share thereof.

5. This lien will support a suit against a judgment creditor of one of the copartners for the purpose of having land, standing in the name of the judgment debtor, declared to be partnership assets.

6. When it can be done rationally, the law always presumes in favor of honesty and against fraud.

7. When a trustee mingles his own funds with trust funds, in an undistinguishable mass, and then takes from the mass a part for his own use, the part taken will be presumed to have been his own and not that which he held as trustee.

8. A decree of dismissal in a prior suit will not bar a second, between the same parties, founded on a cause of action which was neither tried nor triable in the first.

On final hearing on bill, answer and proofs.

*Mr. Frank Bergen*, for the complainant.

*Mr. Cortlandt Parker*, for the defendants.

VAN FLEET, V. C.

The complainant brings this suit to procure a decree charging a debt of record due to him from the defendant Frederick A. Babcock, on land the title to which stands in the name of the

female defendant, Caroline M. Babcock. Frederick and Caroline are husband and wife. The transactions out of which this suit grew were the following: In March, 1884, the complainant and Frederick A. Babcock and one Joseph W. Moyer entered into partnership to purchase and sell coal lands. About the time the copartnership was formed, the copartners purchased, through the agency of the complainant, one hundred and fifty-one acres of coal lands in Schuylkill county, Pennsylvania, and had the title made to Edward B. Babcock, a son of Frederick. Edward then executed a power of attorney to his father, authorizing him to sell and convey the lands. Under this power, the father, in January, 1889, conveyed the lands and received in payment for them and some railroad stock and bonds $15,000. Immediately on the receipt of this money the father delivered to his son Edward $6,000 of the $15,000, in part payment, as it is alleged, of a debt that the father owed his son, and soon afterwards the father appropriated the other $9,000 to his own purposes. No part of the $15,000 has been paid by Frederick to either of his copartners. He still owes them every penny of their shares. The day after Edward received the $6,000, he applied a little over $4,200 of it in paying off a mortgage on his mother's house and lot, where she and his father resided, and which mortgage, when the payment was made, was in course of foreclosure. Edward says that he made the payment without the knowledge of either his mother or his father, and without other consideration than love for his mother. The complainant, in October, 1891, recovered a decree in this court against the defendant Frederick for his share of the proceeds of the sale of the lands, and though final process has been issued on that decree nothing has been realized. Frederick appears to be entirely without means of any kind, and such it would seem has been his condition for many years. These are the facts on which the complainant rests his right to the decree he asks.

Stated generally, the ground on which the complainant bases his right to relief is this: that the money which was used to pay off the mortgage was impressed with a trust in his favor, and that he consequently has a right to pursue, in enforcing the

payment of his debt, the thing which the money was used to procure. As a principle of equity jurisprudence nothing is better settled than that, as between *cestui que trust* and trustee, and all persons claiming under the trustee, otherwise than by purchase for a valuable consideration without notice, all property belonging to a trust, however it may be changed or altered in its character, and all the fruit of such property, whether in its original or altered state, continues to be subject to and affected by the trust. Lord Ellenborough's statement of this principle, in *Taylor* v. *Plumer, 3 Mau. & Sel. 562, 575*, was adopted by Mr. Justice Van Syckel, in pronouncing the judgment of the court of errors and appeals in *Shaler* v. *Trowbridge, 1 Stew. Eq. 595, 602*, and has been recognized, almost universally, as a correct exposition of the law. And this is, in substance, what Lord Ellenborough said : If A is trusted by B with money to purchase a horse for him, and A purchases a carriage with that money, B is entitled to the carriage. It makes no difference, in reason or in law, into what other form, different from the original, the change has been made, for the product of or substitute for the original thing still follows the nature of the thing itself, as long as it can be ascertained to be such, and the right ceases only when the means of ascertainment fail.

In the light of this principle, it would seem to be entirely clear that if it be true, as the complainant asserts, that the money used in paying off the mortgage was held in trust for him, or was impressed with a trust in his favor, he has a right to have the land considered in equity to the extent that it has been exonerated from a mortgage debt by the use of his money, as the product of and substitute for his money. In any case where trust funds have been fraudulently misappropriated, so completely is the thing obtained for the money identical with the money itself that in equity, as was said by Mr. Justice Van Syckel, in *Shaler* v. *Trowbridge, 1 Stew. Eq. 603*, a distinction, in favor of the fraud-doer, can never be drawn between the money misappropriated and the result of its investment. Nor can a third person derive any benefit from a misappropriation of trust funds unless he shows that he acted in good faith and

paid full value. With respect to such ,a person, Mr. Justice Van Syckel, in the same case, said : " When once a fraud has been committed, not only is the person who committed the 'fraud precluded from deriving any benefit from it, but every innocent person is so likewise unless he has, in good faith, acquired a subsequent interest for value, for a third person, by seeking to derive any benefit under such a transaction, or to retain any benefit resulting therefrom, becomes *particeps criminis,* however innocent of the fraud in the beginning." Applying these principles to this case, there would seem to be no reason to doubt that the complainant has a right to have his debt charged on the land in question, to the extent that trust ·funds belonging to him were fraudulently used in discharging the land from its mortgage debt.

This brings the discussion to the vital question of the case, namely, was any part of the money applied in payment of the mortgage subject to a trust or lien in favor of the complainant? In discussing this question, it will be assumed that when the defendant Frederick paid the $6,000 ·to his son Edward, he owed Edward a debt of that amount. Edward, however, was not a creditor of the partnership. He was the creditor of a single member of the firm, and as such stood simply in the right of his debtor, and could take nothing out of the firm assets, as against the other members of the firm, which his debtor was not entitled to. The separate creditor of a member of a firm stands, as to his debtor's interest in the partnership property, in the place and stead of his debtor, and can take nothing which his debtor. could not take. *Hill* v. *Beach, 1 · Beas. 31, 39.* The law regulating the rights of copartners *inter sese* is well settled. No partner has a right to take any part of the partnership property, either during the existence of the partnership or after it has been dissolved, and say that it is his exclusively. *1 Lind. Part. (5th ed..1888) 339.* Each partner has a lien on the partnership property for the payment of the partnership debts, and also on the surplus remaining after the liabilities are discharged, for his share thereof. Lord-Justice Lindley describes this lien or right substantially as follows : Each partner has an equitable

lien on the partnership property for the purpose of having it applied in discharge of the debts of the firm ; and he has a similar lien on the surplus assets for the purpose of having them applied in payment of what may be due to the partners respectively, after deducting what may be due from them, as partners, to the firm. This lien does not exist for any practical purpose until the affairs of the partnership have to be wound up, but when the partnership accounts have been taken and the shares of the partners have been ascertained, then the lien of the partners on the assets of the partnership, and on each other's shares, becomes of the greatest importance. *1 Lind. Part. 352*. Judge Story, both in his *Commentaries on the Law of Partnership* and on *Equity Jurisprudence*, gives a similar description of this right. *Story Part.* § *97 ; 2 Story Eq. Jur.* § *1243*. And Mr. Collyer, in speaking of it, says :

> "Each partner has a specific lien on the partnership stock, not only for the amount of his share, but for moneys advanced by him beyond that amount for the use of the partnership, as also for moneys abstracted by his copartner beyond the amount of his share." *Coll. Part. (3d Am. ed.) p. 109 ¿ 125.*

This lien was recognized by Chancellor Kent in *Nicoll* v. *Mumford, 4 Johns. Ch. 522, 525;* by Chief-Justice Shaw in *Dyer* v. *Clark, 5 Metc. 562, 578*, and by Mr. Justice Bradley in *Hoyt* v. *Sprague, 103 U. S. 613, 624.* And Vice-Chancellor Pitney has held, in an opinion recently filed in *Executors of Harney* v. *First National Bank of Jersey City, 7 Dick. Ch. Rep. 697*, that this lien, *proprio vigore*, constitutes a sufficient foundation to support a suit in equity, by the representative of a deceased copartner against a judgment creditor of the surviving copartner, for the purpose of having it determined whether certain lands standing in the name of the surviving copartner are or are not partnership property, and in case it is decided that they are, then to have the lien of the deceased copartner on the lands declared superior to that of the judgment creditor.

There can be no doubt, then, according to an established principle of equity jurisprudence, that the payment of the $6,000 to Edward B. Babcock was made in fraud of the complainant's rights ; that Edward, as against the complainant, acquired no

right to so much of the $6,000 as represented surplus assets of the copartnership, but took the same subject to the complainant's lien, and that the complainant has an unquestionable right to pursue the product of or substitute for the money until it shall have reached the hands of a person who can show that he obtained it innocently and for full value. This lien, to be of any value to its holder and to answer its fundamental purposes, must continue in full vigor, no matter what transformations the subject of it may undergo, until the debt which it secures is paid—until each partner has received his full share of the surplus assets. The fact that the defendant Frederick had not embezzled or misappropriated any part of the surplus assets when he paid Edward the $6,000, does not in the slightest degree change or impair the complainant's rights. His lien held within its grasp the whole of the surplus assets, and it was not within the power of Frederick, by any act of his, to discharge any part of them from the burden of this lien, except by the payment of the debt which it secured. I think it should be said, in addition, that the relation existing among copartners is one of mutual agency and trust and of great confidence, and consequently in a case like this, where a single partner sells all the partnership property and receives the money for it, it must be held, according to well-established principle, that he holds the shares of his copartners as trustee, and that the money so received by him is, in the strictest sense of the words, trust funds. The conclusion therefore seems to me to be inevitable that so much of the money paid in satisfaction of the mortgage as was in equity the money of the complainant, must be charged on the land redeemed from encumbrance by the money.

The next question to be considered is, how much of the complainant's money can it be justly said was appropriated to the payment of the mortgage? The answer to this question should be such as will rebuke fraud, but at the same time give full protection to every legal right which may be affected by it. The value of the coal lands belonging to the copartners, which the defendant Frederick sold, was ascertained, in the accounting suit, to be $13,590. Frederick, however, received $15,000 from

the purchaser, but his sale embraced, in addition to the lands, some railroad stock and bonds which were his own separate property. Deducting the $13,590 from the $15,000 leaves $1,410 as the value of the stock and bonds. Frederick had also expended some of his own money in paying for the lands. The sums so expended, together with interest on them up to the time the $15,000 was paid, amounted to $969, so that $2,379 of the $15,000 was Frederick's own money. One thousand four hundred and ten dollars belonged to him because it was the proceeds of his own property, and $969 belonged to him because it was due to him as a creditor of the partnership. So far as appears, the partnership had no other creditor. Frederick's right, then, to the $2,379, as against his copartners, would seem to have been perfect, and it would also seem to be clear that he was in a position where he had an indisputable right to exercise complete dominion over it. Now, when he delivered the $6,000 to his son, did he pass the $2,379 as part of it, or did he retain it? In answering this question, the court has nothing to guide its judgment but Frederick's right and Frederick's act. These are only sufficient to raise a presumption, but the presumption which the law draws from them is well-nigh conclusive. When it can be done rationally, the law always presumes in favor of honesty and against fraud. Where an act is equally subject to two interpretations, one making it lawful and innocent, and the other making it unlawful and fraudulent, the law in its benignity declares that that construction shall be adopted which favors innocence and honesty. Sir George Jessel, master of the rolls, in his masterly opinion in *Knatchbule* v. *Hallet, 13 Ch. D. 696, 727,* said: " Nothing can be better settled, either in our own law, or, I suppose, the law of all civilized countries, than this, that where a man does an act which may be rightfully performed, he cannot say that that act was intentionally, and, in fact, done wrongly." And then, to show how the principle he had just stated should be applied, in the actual administration of justice, he said: " The simplest case put is the mingling of trust moneys in a bag with money of the trustee's own. Suppose he has a hundred sovereigns in a bag, and he adds to them

another hundred sovereigns of his own, so that they are commingled in such a way that they cannot be distinguished, and the next day he draws out, for his own purposes, £100, is it tolerable for anybody to allege that what he drew out was the first £100 trust money, and that he misappropriated it and left his own £100 in the bag? It is obvious he must have taken away that which he had a right to take away—his own £100."

It is obvious that, under the pressure of this principle, the court is compelled to presume that the $2,379 formed part of the $6,000 delivered by Frederick to his son Edward. After Edward received the $6,000, the first application or disposition he made of any part of it was to pay $4,222 in satisfaction of the mortgage on his mother's land. It would seem, therefore, to follow necessarily that, by force of the principle just mentioned, it must be presumed that the $2,379 constituted a part of the $4,222 paid in satisfaction of the mortgage. This being so, the court must find that the actual amount of trust funds misappropriated in paying the mortgage was $1,843 and not $4,222.

The remaining question is, has complainant a right to have the whole of the $1,843 charged on the land in his favor, or only the one-half of that sum? The surplus assets belonged originally to the complainant, the defendant Frederick and Mr. Moyer in equal shares. Frederick embezzled the whole. When the embezzlement occurred, no division of the surplus assets had been made and no separation of title or property had been effected, the surplus assets were still held as a unit by joint title. It would seem, therefore, to follow necessarily that Mr. Moyer had precisely the same right in each dollar misappropriated that the complainant had, and also that he has now exactly the same right to the product of each dollar misappropriated that the complainant has. Such being the state of the title to the moneys misappropriated, it appears to me to be impossible to say that the whole $1,843 embezzled belonged to the complainant, but that it must, on the contrary, be said that the one-half of it belonged to him and the other half to Mr. Moyer.

But the female defendant insists that the questions just decided stood concluded, by a prior adjudication, between the complainant and herself when this suit was brought. She was made a party defendant to the suit which the complainant brought against the defendant Frederick to establish a right to a part of the proceeds of the sale of the coal lands. The object in making her a party to that suit was to obtain the same relief against her land which is asked in this, in case the complainant was successful in establishing the right he claimed, and also in showing that money held in trust for him had been used to relieve her land from a mortgage debt. Frederick, by his answer in that suit, denied that the lands which he had sold were partnership property, but claimed, on the contrary, that they were his separate and exclusive property. *Standish* v. *Babcock, 3 Dick. Ch. Rep. 386.* It is thus seen that the controlling primary issue in that suit was whether or not the lands in question were partnership property. In the transactions out of which that issue arose, the female defendant had taken no part, and it was not pretended that any right or interest in property of any kind had been cast upon her by them. She could not, therefore, according to any course of regular proceeding, be made a party to such issue nor compelled to try it. Nor was it possible for the complainant to acquire a standing which would give him a right to maintain an action to have his debt charged on her land, until he had first obtained a decree establishing the fact that a debt was due to him. For these reasons the court, *ex mero motu,* immediately after the pleadings were read, and before the production of any proofs, dismissed the bill in that suit as against the female defendant. This judicial action was put distinctly on the ground that the female defendant could not be made a party to the contest, as to whether the lands sold by Frederick were partnership property or not, and that until the complainant had judicially established the fact that they were, he could not call upon her by suit to show why her land should not be charged with his debt. There can be no doubt that the judgment of a court of competent jurisdiction, on a point of law or a question of fact, or on a question of blended law and fact, does, so long as it

remains unreversed, have the effect, as between the parties and those standing in privity with them, to put the question or matter adjudged at rest finally and forever and for all purposes. But a judgment to have this conclusive force must be on a question or matter which was either tried or triable in the suit or proceeding in which it was pronounced. *City of Paterson* v. *Baker, 6 Dick. Ch. Rep. 49.* From what has already been said, it is manifest that the questions heard and determined in this suit were neither tried nor triable in the former suit. For this reason, the decree of dismissal in that suit did not bar the right of action upon which this suit rests.

The complainant is entitled to a decree charging $921.50 with interest from January 10th, 1889, on the land of the female defendant, together with his costs of this suit.