Babcock v. Standish.

CAROLINE M. BABCOCK, appellant,

*v.*

WILLIAM P. STANDISH, respondent.

Money paid by one partner to his individual creditor in satisfaction of a just debt, and received by the creditor without knowledge or notice that it is partnership money, may be retained by such creditor against the claims of the

Babcock *v.* Standish.

partnership or the other partners, although it was, in fact, money derived from the sale of partnership property—*aliter* as to partnership property transferred in payment of an individual debt.

On appeal and cross-appeal from a decree advised by Vice-Chancellor Van Fleet, whose opinion is reported in *Standish* v. *Babcock, 7 Dick. Ch. Rep. 628.*

*Mr. Cortlandt Parker*, for Standish.

*Mr. Frank Bergen*, for Babcock.

The opinion of the court was delivered by

Magie, J.

The decree appealed from charged upon lands of Caroline M. Babcock the sum of $921.50, with interest from January 10th, 1889, in favor of William P. Standish, and directed that, unless that sum with costs should be paid within a stated time, said lands should be sold to raise what was thus charged thereon.

Caroline M. Babcock, who was one of the defendants below, appeals from the decree, on the ground that it was erroneous to charge her lands with any part of that sum.

William P. Standish, who was complainant below, appeals from the decree and contends that it was erroneous in not charging on said lands a larger sum.

These appeals have been argued together.

To make intelligible the conclusions I have reached upon the case presented, a brief statement of the pleadings, showing the issues between the parties, is necessary.

The bill was filed by Standish against Caroline M. Babcock and Frederick A., her husband. It charged that Frederick A. Babcock, Joseph W. Moyer and Standish, in 1884, entered into a written agreement of partnership in the business of purchasing and selling coal lands in Schuylkill county, Pennsylvania; that under that agreement lands were purchased and sold at a profit, and the proceeds of the sale were received by Frederick A. Babcock; that in 1890 Standish filed a bill in our court of chancery

against Babcock and Moyer for an accounting and settlement of the partnership affairs, and it was thereon decreed, on October 10th, 1892, that Babcock was indebted to Standish in $4,941.73, said sum being Standish's share of said profits; that said profits arose from the purchase and sale of lands in said county which were bought in 1884, and sold to one Frisbie on January 8th, 1889, for $15,000, which sum was then paid to said Babcock; that on January 10th, 1889, said Babcocck, out of said sum so received, paid off a mortgage which then encumbered lands of his wife amounting to $3,500 of principal and the interest then due thereon.

The bill also charged that the decree remained unsatisfied, and that Frederick A. Babcock had property which could not be reached by execution, and there was a prayer for discovery against him.

As to Caroline M. Babcock, the prayer was that the sum paid by her husband in satisfaction of the mortgage on her lands should be made a charge and lien on said lands in favor of Standish, and that they might be sold to raise and pay him that amount.

The bill did not call for answers without oath.

Caroline M. Babcock, by her answer, denied knowledge, or information justifying belief, whether the agreement of partnership set out in the bill was ever entered into, or whether, under it, lands were purchased and sold at a profit, or whether the proceeds of any such sale were collected and received by her husband. She admitted that Standish had filed a bill in the court of chancery, against Moyer and her husband, for an account and settlement of the affairs of the alleged partnership, but averred that it was also filed against her and one Edward M. Babcock, and, after having been duly tried, had been dismissed upon the merits as to her. She admitted, on information and belief, that such a decree as was set out in the bill had been made in that cause. She denied knowledge or information in respect to the purchase of land and the subsequent sale to Frisbie, or the receipt by her husband of $15,000 as the proceeds of that sale, and she left complainant to make proof thereof. She admitted that the mort-

gage on her lands had been paid off, but denied that it was paid by her husband, averring that, being under foreclosure, it was paid by her son, Edward M. Babcock.

By the answer she further averred that the previous bill of Standish had charged that her husband had applied part of the money received by him from the sale to Frisbie to the satisfaction of the mortgage on her lands, and had prayed relief by charging as a lien upon her said lands the amount so paid, and by selling said lands to discharge such lien. She averred that by her answer to that bill an issue was presented upon those charges which was duly tried, and a decree made thereon that the bill should be dismissed as against her, with costs. She thereupon claimed that the matter thus established by that decree was conclusively established as against Standish, and prayed to have the same benefit of this defence as if she had pleaded the decree in bar.

To this answer was appended an affidavit containing the customary averments of affidavits to answers, and the further averments that the proceedings and decree in the former suit were correctly set forth in the answer, and that a copy of the decree annexed to the answer was true and correct.

There was no affidavit or certificate of counsel such as is required to be annexed to a plea or demurrer. *Rev. p. 109 § 27.* But the complainant below filed a general replication and the cause went to hearing upon those pleadings.

The evident purpose was to interpose the defence of *res adjudicata.* If the answer in that respect stood for a plea, the burden of proving its truth devolved upon the party pleading, for it is plainly an affirmative plea. *1 Dan. Ch. Pr. 718; Swayze* v. *Swayze, 10 Stew. Eq. 180.* If it is to be deemed a defence set up by answer, it must be sustained by proof. For if this answer was called for and put in under oath, it will not be evidence of new matter set up in defence. In either aspect proof of the former suit, including the pleadings, which would show what issues were there tried or triable, and the decree thereon, was necessary to support the defence. The case before us discloses no proof whatever of this sort. The learned vice-chancellor who tried this

Babcock *v.* Standish.

case indicates by his opinion that he conceived that he had before him the proceedings in the former cause, and that they showed that the dismissal therefrom of Caroline M. Babcock was ordered by the court *ex mero motu*, and without considering the issue presented by her answer, because she was not a proper party. If the record disclosed such a dismissal it would probably fail to establish the truth of the plea or answer. If the record did not disclose the ground of dismissal, extrinsic evidence could make it clear. *Russell* v. *Place, 94 U. S. 606.* But here we have not the record of the former cause, and in its absence there is nothing to support the defence of *res adjudicata.*

Although this defence was not made out by proof, it is also true that the proof which appears to have been made in this cause was insufficient to justify a decree in favor of Standish. By his bill, he asserted that, in equity, the lands of Caroline M. Babcock should be recharged with the burden from which they had been gratuitously relieved by her husband's use of partnership funds for that purpose, and made to satisfy Standish for his share as one of the partners. Under the answer he was required to prove the partnership, the resulting profit, and particularly that the $15,000 received by Frederick A. Babcock were the result of the sale of partnership property. Without such proof, the equity here asserted was not established.

But the case before us is barren of proof upon these points. While the decree in the former cause was not put in evidence, yet, as Caroline M. Babcock had set it out in her answer and appended a copy thereto, Standish had a right to rely upon it as evidence against her if it possessed evidential force in that regard. But it was not competent proof against her of the facts essential to his case. For although she was originally made party to that suit, she was dismissed therefrom. She was not bound by the decree, and its adjudications on the essential facts do not estop her from contesting them and requiring other proof. If she was a proper party in that cause, Standish could have appealed from the order dismissing her therefrom, and by its reversal would have bound her by the decree. But after dismissal, the decree

was as ineffective against her as if she had not been originally a
party to the suit.

As the decree is thus unavailable as proof, the case is left with-
out proof on these essential points.   Indeed, the only evidence
upon the subject is that of Frederick A. Babcock, who, when
called as a witness by Standish, repeatedly declared that the
$15,000 which he received from Frisbie were the proceeds of the
sale of railroad bonds and stock, and not of the coal lands.
While it is true that he is estopped from this defence by the de-
cree in the former cause, yet he is admissible to testify in defence
of his wife, who is not estopped thereby.

The result is that there is no evidence to support the decree
appealed from.

But this result is by no means satisfactory.   The learned vice-
chancellor who advised the decree evidently deemed that he had
before him evidence that raised the legal questions which he
decided.   Indeed, his opinion indicates that he believed that he
had before him not only the pleadings and decree but also the
evidence taken in the former cause, for he states facts that
nowhere appear in proof of this cause.

If we assume, as he did, that it appeared that the $15,000
paid by Frisbie to Frederick A. Babcock was the price of lands
belonging to the partnership, a question is presented decisive of
the case.

Although the charge of the bill was that Frederick A. Bab-
cock had paid off the mortgage on his wife's lands out of the
$15,000 received by him, the facts proven in this cause do not
support this charge.   The truth was, that shortly after the
receipt of that sum Frederick A. Babcock paid $6,000 of it to his
son, Edward B. Babcock, and the latter, almost immediately,
applied enough of that sum to discharge the mortgage on his
mother's lands.   It is suggested by Standish's counsel that these
circumstances point to fraud and justify the inference of collusion
to invest the discharge of the mortgage with an appearance of
filial generosity, while in reality it was a scheme to divert part-
nership funds to an unlawful purpose.   But the vice-chancellor
failed to draw any such deduction from any evidence before him,

and our review of the evidence before us convinces us that in so doing he was not in error. The evidence that the payment of $6,000 to Edward was a payment upon a just debt honestly due is uncontradicted. The circumstances supposed to be suspicious are explainable by the near relationship of the parties, and will not justify an inference of fraud. There is ample corroboration of the ability of the son to make the advances to his father out of which arose the indebtedness upon which the $6,000 were paid. It must be considered as established that the payment was made upon a debt honestly due.

We also think that the evidence before us plainly shows that the son received that payment without any knowledge that the money paid was or was claimed to be partnership funds. Nor is there anything discoverable in the evidence which shows that he was put upon inquiry on that subject. His evidence is uncontradicted that he supposed the money thus paid him was from the proceeds of the sale of some railroad bonds and stock made by his father.

The question, then, is whether Edward B. Babcock can retain money paid to him by his father upon an honest debt, and received by him without knowledge or notice that the money belonged to a partnership of which his father was one.

The solution of this question is not affected by the subsequent application of part of this money by way of a gift to his mother. For if Edward had acquired a right thereto he could dispose of it at his pleasure.

The question was solved by the court below by the application of the well-settled doctrine of the law of partnership that each partner has a lien on partnership property for the payment of partnership debts, and upon the surplus after such payment for his share. 1 Lind. Part. *352. It was considered that it followed from this doctrine that one partner might follow money belonging to the partnership into the hands of a creditor of an individual partner who had received it in payment of his debt without knowing that it was partnership money, and might require such creditor to restore the money so received to the partnership, or at least to account for his share thereof. And

Babcock v. Standish.

this decree, if made upon the facts deemed to have been before the vice-chancellor, can only be supported upon that proposition.

There can be no doubt that one partner cannot give away partnership property, or things procured by partnership money, and that the donee will be deemed to be a trustee for the partnership and required to account for such gifts. *Shaler* v. *Trowbridge, 1 Stew. Eq. 595; Partridge* v. *Wells, 3 Stew. Eq. 176; S. C., 4 Stew. Eq. 362.* Nor can one partner give a partnership obligation in payment of his individual debt without the consent of the other partners, and it has been held in this state that the creditor who thus accepts partnership obligations from one partner has the burden cast on him to prove the consent of the other partners. *Mecutchen* v. *Kennady, 3 Dutch. 230; Dob* v. *Halsey, 16 Johns. 34.* Nor can a partner transfer or create a lien upon partnership property for the payment of his individual debt to a creditor who has knowledge that the property so transferred or pledged is partnership property. *Matlack* v. *James, 2 Beas. 126; Clements* v. *Jessup, 9 Stew. Eq. 569.* And this doctrine will apply to partnership money paid by one partner to his individual creditor if the latter knows that the money belongs to the partnership. *Piercy* v. *Fynney, L. R. 12 Eq. Cas. 69; Kendal* v. *Wood, L. R. 6 Exch. 243; 17 Am. & Eng. Encycl. L. 1250; Davis* v. *Smith, 27 Minn. 390; Dob* v. *Halsey, ubi supra.*

In the opinion delivered in the supreme court in *Mecutchen* v. *Kennady, ubi supra,* Chief-Justice Green indicated his approval of the doctrine declared by the supreme court of the United States in *Rogers* v. *Batchelor, 12 Pet. 221.* That doctrine was that a partner could not apply partnership property to the payment of his individual debt so that the title of the partnership thereto would be divested, even if the individual creditor was ignorant that the property received by him belonged to the partnership. Mr. Justice Story, who delivered the opinion in that case, put the doctrine upon the ground that the true question was whether the title to the property had passed from the partnership to the individual creditor. The reasoning is that the implied agency of one partner to dispose of partnership property extends

only to its disposition for partnership purposes, and not to its application to the purposes of one of the partners. An individual creditor receiving property upon his debt may, by inquiry, discover the title of his debtor who thus applies such property, and may in this mode be chargeable with the knowledge which would be acquired upon such inquiry.

But if this doctrine, supported by such authority, be admitted to be correct (as to which no opinion need be expressed), the question remains whether it applies when a partner uses, not property, but money, of the partnership in the discharge of his individual debt.

In my judgment there is a marked distinction between the two cases. This results, not from the old notion that money has no "ear-mark," but because money has the quality of currency, passing from hand to hand in all *bona fide* transactions without the necessity of inquiry on the part of him who receives it as to the title of the party who pays it. When property thus passes the recipient may be put upon inquiry as to its title; when money thus passes no inquiry is required. In the former case the knowledge which inquiry would produce would charge the recipient; in the latter case nothing but actual knowledge will charge him. It was forcibly said by Lord-Justice Fry, in *Northern Counties &c.* v. *Whipp, L. R. 26 Ch. Div. 482*, that "the proposition that money obtained by fraud can be followed into the hands of persons who take it in satisfaction of a *bona fide* debt without notice is, in our judgment, devoid of support from principle or authority." *Perry Trusts § 837 ; Lew. Trusts *892.*

The result is that if this case appeared before us as it seems to have appeared to the vice-chancellor, in my judgment his conclusion was erroneous and the decree made thereon cannot be supported.

It has been deemed best to state this conclusion, as the contrary view expressed in the court below will tend to greatly limit dealings with persons who are copartners. If a creditor of any individual partner cannot retain money paid upon his debt, if the money so paid was in fact partnership money,

although not known to be so by the creditor receiving it, dealings with individual partners will be seriously affected.

For the reasons above set forth, the decree must be reversed, with costs.

*For reversal*—GARRISON, GUMMERE, LIPPINCOTT, LUDLOW, MAGIE, VAN SYCKEL, BOGERT, BROWN, KRUEGER, SIMS, SMITH, TALMAN—12.

*For affirmance*—None.