EDWARD D. STOKES

*v.*

BURLINGTON COUNTY TRUST COMPANY et al.

[Submitted November 14th, 1919.   Decided November 17th, 1919.]

1. The surety of a defaulting trustee may, as against the creditors of the trustee, recover the proceeds of property purchased by the trustee with trust funds, on the principle that a surety is entitled to be relieved from the dishonesty of his principal by compelling him to return the loot.

2. A *cestui que trust* may trace and recover trust funds unlawfully diverted by his trustee.

3. The Orphans Court act as to insolvent estates (section 99) does not apply to trust funds in the hands of decedent at his death.

4. A substituted trustee who, in ignorance of the fact that the deceased trustee who had misappropriated trust funds, had used the same to purchase land, taking title in his own name, filed a claim as a creditor in the orphans court against the estate of the deceased trustee, did not waive the right to trace the funds into the land.

5. Where a trustee and guardian with the joint funds of the two estates purchased land, taking title in his own name, the proceeds realized by the executor of the guardian and trustee inure to those two estates.

On bill, &c.

*Mr. V. Claude Palmer,* for the complainant.

*Mr. Samuel A. Atkinson,* for the defendant Mount Holly Safe Deposit and Trust Company.

*Mr. George B. Evans,* for the defendant Burlington County Trust Company.

BACKES, V. C.

This suit is to recover trust funds fraudulently misappropriated. The facts are few and undisputed.

Thomas Wood bequeathed to Israel H. Johnson $15,000 in trust for the benefit of his demented son, Reading Wood. Upon Johnson's death William B. Wills was substituted as trustee, and about the same time he was appointed guardian of the incompetent son by the Orphans Court of Burlington county. Among other items, there came to Wills' hands, as trustee, Lehigh Coal and Navigation bonds of the par value of $11,000; and as guardian, Lehigh Coal and Navigation bonds of the par value of $2,500. Shortly after his appointments, 1895, Wills sold these blocks of bonds for $11,893.75 and $2,703.13, respectively, and with the proceeds purchased the Indian Hill Farm, paying therefor $13,411.19, and took title in his own name. Wills continued as trustee and guardian until his death, 1915, when he was succeeded in both offices by the Mount Holly Trust Company. Wills' estate has been declared insolvent. His executor, the Burlington County Trust Company, sold the Indian Hill Farm for $15,109.60, which now forms part of the liquid assets of the estate for *pro rata* distribution among the creditors. Pursuant to a rule to bar creditors, the Mount Holly Trust Company, as trustee and guardian, presented its claims for $35,360.90 and $9,364.85, respectively, which were allowed. These claims represented the principal and accumulated interest on the sums turned over to Wills when he took office as trustee and guardian. When they were presented and approved, and up until shortly before the hearing of this case, the Mount Holly Trust Company was unaware that Wills had used the funds of the two estates to purchase the Indian Hill Farm.

The complainant, Stokes, is one of the sureties on Wills' bond of $24,000 given for the faithful performance of the trust. To indemnify himself he filed this bill against Wills' executor to recover for the Wood (trust) estate so much of the proceeds of the sale of the Indian Hill Farm as represents the trust funds misappropriated by his principal in its purchase. The Mount Holly Trust Company, as substituted trustee and substituted guardian, filed a counter-claim against Wills' executor to recover the entire proceeds.

The defences interposed by the Burlington County Trust Company, executor of Wills, are technical. It sets up that the com-

plainant, as surety, has no standing to bring this suit—that he is not entitled to protection against ultimate loss by a restoration, of the misappropriated trust funds. I am not referred to any authorities to support the proposition, and believe none can be found to even give color to its soundness. Common honesty and morality dictate that a surety be relieved from the consequences of the dishonesty of his principal by compelling him to return the loot. That is the complainant's effort and his right to relief in equity is unquestionable. *Irick* v. *Black, 17 N. J. Eq. 189;* *Philadelphia and Reading Railroad Co.* v. *Little, 41 N. J. Eq. 519;* *Kidd* v. *Hurley, 54 N. J. Eq. 177;* *Beacon Lamp Co.* v. *Travellers Insurance Co., 61 N. J. Eq. 59.* But the question is academic, in view of the counter-claim interposed by the Mount Holly Trust Company, representing the *cestui que trust,* whose right to institute proceedings to recover the trust funds is conceded. It is settled law that a *cestui que trust* may trace and recover trust funds unlawfully diverted by his trustee. *Smith* v. *Combs, 49 N. J. Eq. 420;* *Babcock* v. *Standish, 53 N. J. Eq. 376;* *Hunt* v. *Smith, 58 N. J. Eq. 25;* *Ellicott* v. *Kuhl, 60 N. J. Eq. 333.*

The objection to the relief prayed for by the Mount Holly Trust Company, as substituted trustee and guardian, is, that the orphans court's decree of insolvency fastened the claims of creditors of Wills upon the estate in the hands of the executor, equally, and that it has elected to become a common creditor by presenting its claim under the rule to bar creditors, and, consequently, has waived its right to trace the funds. The position is untenable. The Orphans Court act (*Comp. Stat. p. 3848 §* *99*), providing that a decedent's estate, if insufficient to pay debts, shall be distributed equally among the creditors in proportion to their debts, applies only to the estate proper of a decedent, and does not include trust funds of which he dies possessed. As Vice-Chancellor Howell remarked in, *Koch* v. *Feick, 81 N. J. Eq. 120:* "It is a decree in favor of creditors only, and can fasten their debts only on those funds which are applicable to the payment of debts." And there was, manifestly, no waiver because, as admitted by the pleadings, the Mount Holly Trust Company did not know at the time it presented its claims that

the trust funds were traceable into, and formed part of, the Wills estate. There can, obviously, be no waiver without knowledge of the facts upon which the alleged waiver is predicated.

As the farm was purchased by the trustee with the joint funds of the trust and guardian estates, the entire proceeds realized by the executor from its sale enures to these estates (*Shaler* v. *Trowbridge,* 98 *N. J. Eq. 595*), and a decree will be advised awarding it proportionately, with costs.