This bill seeks to impress a lien upon lands of the defendant Moeck for the sum of $5,276.10 paid by the complainant's *Page 426 
solicitor-trustee to the Orient Building and Loan Association in payment and cancellation of a mortgage held by the Orient association against Moeck's property. The Orient Building and Loan Association has intervened as party defendant in these proceedings and has filed a counter-claim seeking the re-establishment of its mortgage in the event that the association is held liable to the complainant. This controversy arises out of the following circumstances:
On April 16th, 1927, Morris W. Shapiro and his brother-in-law, Morris Karetnick, sold and conveyed to the defendant Moeck certain premises in the town of Irvington, New Jersey, commonly known as 94 Payne avenue. At that time the property was encumbered by a mortgage in the sum of $6,000 held by the Orient Building and Loan Association, and both Shapiro and Karetnick were on the bond accompanying the mortgage. The title was in Karetnick but Shapiro was a part owner. At the time of the settlement Moeck was short $3,000 of the purchase price and borrowed that sum of the defendant Gross and gave him a mortgage in like amount. Both Moeck and Gross knew of the existence of the Orient mortgage but left it to Shapiro, who acted for them in the transaction, to pay off the mortgage and secure its cancellation. This he did not do, but continued paying the monthly installments on the mortgage thereafter for a period of nearly two years. Both Moeck and Gross paid no further attention to the matter, assuming that Shapiro had carried out their instructions to pay the mortgage and secure its cancellation, until in the early part of 1929 when it was brought to Moeck's attention that the mortgage was still in existence and its foreclosure was imminent. Moeck thereupon employed a lawyer who first took the matter up with Krieger, the attorney for the Orient association, and told him the mortgage was supposed to have been paid at the time of the conveyance to Moeck and that Shapiro was to pay it and arranged with Krieger to hold up the foreclosure proceedings. This was on April 12th. He then took it up with Shapiro and gave him until April 15th, 1929, to pay the mortgage and secure its cancellation. On that day Shapiro produced a receipt *Page 427 
of Krieger showing payment of the bond and mortgage and later they were delivered by Krieger to Moeck's attorney duly marked for cancellation and the mortgage was thereupon canceled of record. At that time Shapiro was solicitor of the complainant association and disbursed its funds loaned on mortgage through a trustee's account, checks upon which were signed only by him as trustee. This was in pursuance of a plan approved by the department of banking and insurance. The funds which Shapiro used to pay the Orient mortgage represented the proceeds of a check of complainant dated April 15th, 1929, to the order of the "Trustee's Account, Ordway Building and Loan Association" in the sum of $5,729.75, deposited in the trustee's account for disbursement of a loan granted to one Vincent Derasmo on No. 1 Wolf Place, Irvington, New Jersey. At the time that check was deposited in the trustee's account there was on deposit there, in addition to that sum, only about $100, which was the usual balance maintained between loan transactions. The check drawn to the Orient association in payment of its mortgage was in the following form:
 "Trustee Account Ordway Building Loan Assn. No. 78. Newark, N.J., April 15, 1929.
 Pay to the order of Orient B L Ass'n $5,276 10/100. Five Thousand Two Hundred Seventy-six 10/100 Dollars.
 Weequahic Trust Company Trustee Account 55-530 Newark, N.J. Ordway B/L Assn. Morris W. Shapiro, Trustee."
There is no doubt but that the complainant's money intended for the Derasmo loan was diverted by Shapiro, its trustee, to the payment of a mortgage for which he was himself personally liable both by reason of his having executed the bond which that mortgage was given to secure, and by reason of the fact that he had received from Moeck and Gross moneys with which to satisfy that mortgage, and this is not denied.
The misapplication of these funds by its trustee was not discovered by the complainant until June 3d 1929, when an *Page 428 
examination of the trustee's account by the banking and insurance department disclosed discrepancies and Shapiro fied the jurisdiction. He was later apprehended, however, convicted of embezzlement and is now serving a term in the New Jersey state prison.
The main question to be decided is whether or not the complainant can follow its funds into the hands of the Orient Building and Loan Association and have its claim against Shapiro, the defaulting trustee, enforced against Moeck's property on the theory that his (Moeck's) equity therein has been enhanced by the misappropriation of trust funds by the trustee to the extent of the trust funds so used. Shortly after this bill was filed the complainant began a suit at law against the Orient Building and Loan Association to recover the moneys paid to it as above detailed. (That this was not objectionable see Way v. Bragaw,16 N.J. Eq. 213, and Hanford v. Duchastel, 87 N.J. Law 205.) The theory of the Orient's claim in this suit is that if it is obliged to repay the complainant for the misappropriated funds it received, it should be entitled to reinstatement of its mortgage against Moeck's property. On behalf of Moeck and Gross it is claimed that the present situation is due to the negligence of complainant in permitting its solicitor-trustee to so handle its funds as to make possible a transaction of this kind; and in not discovering its trustee's misapplication of funds for a period of six weeks, during which time both Shapiro and Karetnick had been reduced to such financial circumstances as would render recovery by Moeck against them an impossibility; and claim that if this defalcation had been discovered immediately, Moeck would have been able to secure himself by attachment of property or property rights then owned by both Shapiro and Karetnick. But there is no reliable evidence to support this claim. On behalf of the complainant it is alleged that the situation is the result of the negligence of Moeck and Gross, who knew of the existence of the Orient mortgage at the time of the settlement on the conveyance by Karetnick to Moeck in April, 1927, and permitted it to remain open and unpaid. Complainant also alleges that the Orient association *Page 429 
was negligent in accepting the trustee's check without inquiry as to the trustee's authority to apply moneys in its hands to satisfy a debt for which the trustee, himself, was personally liable. The Orient association's contention is that there was no negligence on its part as the check was received in the regular course of business and pursuant to a well-recognized custom of dealing amongst building and loan associations in mortgage transactions whereby the proceeds of a mortgage obtained in one association are used to pay and satisfy a mortgage held by another association on the same property, disbursements for such purposes uniformly being through the medium of a trustee's account such as that here involved. The fact that the complainant did not discover its trustee's defalcations for a period of six weeks after this transaction took place is not proof of negligence by the complainant; nor was the complainant negligent in disbursing its funds through the trustee account and upon checks signed only by its trustee. That was in pursuance of a method approved by the department of banking and insurance, which exercised supervisory control over the association. It would seem that building and loan associations ought not to be criticised for following the lead of the statutory guide. It is the province of the department to supervise and direct the activities of financial institutions under its control to the end that those dealing with them may do so with safety and security and guarded against property loss. That the best means of protection devised by this department fall short of their object is not proof of negligence either in the department or the institution which it supervises.
In Standish v. Babcock, 52 N.J. Eq. 628, it was held that when trust funds are fraudulently misappropriated in paying off a mortgage, the cestui que trust has a right to have the debt incurred by the misappropriation charged on the land which has been relieved from the encumbrance by the fraudulent use of his money. Although the decree in that case was reversed by the court of errors and appeals (53 N.J. Eq. 376) this principle of equity jurisdiction was not challenged. Ellicott v. Kuhl,60 N.J. Eq. 333; Koch v. Feick, 81 N.J. *Page 430 Eq. 120. The opinion of the court of errors and appeals reversing Vice-Chancellor Van Fleet's decree was delivered by Mr. Justice Magie. Later, speaking as ordinary in Ellicott v.Kuhl, supra, (at p. 336), he said:
"The case of Standish v. Babcock was reversed in the court of errors and appeals, but no dissent from the doctrine I have stated was there expressed. The reversal went on the ground that the trust fund had been turned into money and used by the trustee in the paying of a bona fide obligation to a creditor who was wholly ignorant that the payment was made from the proceeds of the trust property. It was held that the creditor might accept such money and retain it against the cestui que trust, not because money has no `ear mark,' but because it passes in allbona fide transactions without necessity of inquiry into the title of the debtor who makes the payment."
This language is as applicable to the doctrine pertinent to the instant case as to that to which particular reference was there made. In Koch v. Feick, supra, Vice-Chancellor Howell, referring to Standish v. Babcock, said:
"This case was reversed in 53 N.J. Eq. 376, not upon the law of the case as applied to the following of trust funds, but as to its application."
The equitable doctrine enunciated by Vice-Chancellor Van Fleet in Standish v. Babcock is undoubtedly in force in this state and applies perfectly to the facts of the instant case. See, also, Shaler v. Trowbridge, 28 N.J. Eq. 595; Stokes v.Burlington County Trust Co., 91 N.J. Eq. 39. In view of these authorities there can be no question as to the right of complainant to a lien upon the land of the defendant Moeck, prior to the lien of the mortgage held by the defendant Gross, as the mortgage which was paid by the complainant's funds was superior to Gross's mortgage.
In considering the rights of the parties it may be conceded that both Moeck and Gross acted in good faith, but they have not paid full value for the moneys used in payment of the Orient mortgage. That payment unquestionably inured to their benefit. In the Babcock Case it was also held that no *Page 431 
person can derive a benefit from a misappropriation of trust funds unless he shows that he acted in good faith and paid full value. It is said that they have lost their claim against Shapiro and Karetnick by lapse of time during which these men have become insolvent. But their claim is not lost. They can still press it and can undoubtedly recover a judgment. That there is little likelihood of such a judgment being satisfied out of the property of either Shapiro or Karetnick or both does not indicate that Moeck and Gross have given up any value for the misappropriated moneys. There is no evidence that when these moneys were misappropriated they then had any property out of which a judgment could then have been satisfied. But it is quite probable that both were financially responsible two years before when the conveyance to Moeck by Karetnick was made.
A more difficult question arises, however, with respect to the rights of the complainant against the Orient association. That association having intervened in this cause and thus subjected itself to a decree of this court, there is no reason why the rights as between the complainant and the Orient association as well as of all other parties to the suit, should not be here adjudicated. At the final hearing it was contended that no decree should go against the Orient association because it had no notice of the trustee's misapplication of funds and that it was justified in accepting the trustee's check in satisfaction of its mortgage without question in view of the custom of paying one building and loan association mortgage with the proceeds of another. But an analysis of the facts and circumstances surrounding this transaction I think will disclose that the Orient association had notice, or was put upon inquiry amounting to notice, that trust funds were being used in the payment of a personal obligation of the trustee. The evidence showed very clearly that when the defendant Moeck discovered that the foreclosure proceedings were about to be instituted against him on the Orient association mortgage, his attorney, Egner, called Mr. Krieger, the attorney for the Orient association, on the telephone and told him that when Moeck purchased the property it was *Page 432 
supposed to be free and clear of the Orient association mortgage, and that Shapiro was to take care of it, and asked that the foreclosure proceedings be held up. This was on April 12th, 1929, and three days later Krieger received a trustee's check from Shapiro, copy of which appears above, in payment and satisfaction of the Orient association mortgage.
The unescapable inference to be drawn from the conversation between Egner and Krieger, testified to by both of them at the final hearing, is that Krieger knew that Shapiro had failed to pay this mortgage at the settlement between Karetnick and Moeck which took place two years before. Krieger must have known that Shapiro was liable on the bond which this mortgage secured. He drew the bond and had it and the mortgage in his possession for foreclosure proceedings. The check which he received plainly indicated that trust funds were being used by the trustee in satisfaction of a debt for which Krieger must have known that the trustee was personally liable. Undoubtedly Shapiro in his capacity as trustee was, in effect, a special agent for the complainant, and the Orient association was chargeable with the knowledge of the extent of his authority. Persons dealing with one who is known to be a special agent are chargeable with knowledge of the extent of his authority. Dowden v. Cryder,55 N.J. Law 329. Krieger knew that he was dealing with a trustee and that trust funds were being used in the transaction. In view of what he had already learned from Egner, it was Krieger's duty to inquire as to Shapiro's authority to use such funds in payment of the mortgage, and it is well settled that whatever puts a party upon inquiry amounts in judgment of law to notice, providing the inquiry became a duty, and would lead to the knowledge of the requisite facts, by the exercise of ordinary diligence and understanding. Hoy v. Bramhall, 19 N.J. Eq. 563;Todd v. Exeter Land Co., 104 N.J. Eq. 431.
The Uniform Fiduciaries act (P.L. 1927 ch. 30 p. 65) does not, under the circumstances, affect the liability of the Orient association. Section 5 of that act reads as follows: *Page 433 
"Check Drawn by Fiduciary Payable to Third Person. If a check or other bill of exchange is drawn by a fiduciary as such, or in the name of his principal by a fiduciary empowered to draw such instrument in the name of his principal, the payee is not bound to inquire whether the fiduciary is committing a breach of his obligation as fiduciary in drawing or delivering the instrument, and is not chargeable with notice that the fiduciary is committing a breach of his obligation as fiduciary unless he takes the instrument with actual knowledge of such breach or with knowledge of such facts that his action in taking the instrument amounts to bad faith. If, however, such instrument is payable toa personal creditor of the fiduciary, and delivered to thecreditor in payment of or as security for a personal debt of thefiduciary in the actual knowledge of the creditor, or is drawnand delivered in any transaction known by the payee to be for thepersonal benefit of the fiduciary, the creditor or other payee isliable to the principal if the fiduciary in fact commits a breachof his obligation as fiduciary in drawing or delivering theinstrument." (Italics mine.)
There is no doubt in my mind but that the italicised portion of the quoted section of that act is applicable in all its force to the Orient association.
The equitable thing to do under the circumstances of this case, it seems to me, is to restore all the parties to this transaction to the position they occupied at the time of the trustee's misappropriation of the trust funds. That can be done by entering a decree directing that the Orient association repay to the complainant that which it received in satisfaction of its mortgage; that that mortgage be reinstated in favor of the Orient association in its original position of priority over the mortgage of the defendant Gross; and that pending such repayment by the Orient association to the complainant and the reinstatement of said mortgage, the land of the defendant Moeck be impressed with a lien in the amount of the decree against the Orient association in favor of the complainant and prior in lien to the mortgage of the defendant Gross, and that will be the decree of the court. *Page 434